# WILLIAM B. THOMAS *vs.* GEORGE D. PENNIMAN
## ET AL.

*Liability of Directors of a Corporation—Dividends Declared and Loans
Made in Violation of Charter.*

A bill by receivers of an insolvent corporation against its directors alleged
that they declared dividends which impaired the capital stock contrary
to the provision of the charter of the company, and charged specific
acts of negligence on the part of the directors in failing to inform them-
selves of the condition of the company before declaring the dividends.
*Held*, that the bill requires an answer from the defendants and is not
demurrable.

When the charter of a corporation makes the directors liable for losses
resulting from loans made to an officer or employee to which they con-
sent, a bill against a director seeking to make him responsible for the
loss resulting from such a loan, must show that he consented thereto
directly or indirectly.

*Decided April 2nd, 1907.*

Appeal from the Circuit Court of Baltimore City (NILES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE,
SCHMUCKER and BURKE, JJ.

*James A. C. Bond* and *Francis Neal Parke* (with whom was
*W. W. Parker* on the brief), for the appellant.

*Thomas Hughes* and *Clifton Doll Benson*, for the appellees.

BOYD J., delivered the opinion of the Court.

It will not be necessary for us to express our views at length
on the demurrers of Wm. B. Thomas to the bill in this case
as the opinion filed in the previous case of *Thomas et al* v.
*Penniman et al* sufficiently states them, as to the most of the
questions raised. The principal difference between this bill
and that in the other case is the charge against these directors,
who served during the year 1902, that they declared two div-

idends, which impaired the capital stock, contrary to sec. 5 of the charter of the company. They are referred to in paragraphs (10) and (11) of the bill, which are especially demurred to. Paragraphs (14) and (15) are also especially demurred to, and they refer to alleged illegal loans made to officers of the company.

(1.) Mr. Thomas was present at the meeting of directors on June 26th, 1902, at which a dividend was declared, and although he was not at the meeting on December 10th, 1902, at which the other dividend complained of was declared, the bill alleges that the directors who were not present received the dividends upon the stock held by them, assented thereto and ratified the same. The mere fact that directors declared dividends, when subsequent developments show they ought not to have done so, does not, of course, make them liable under such a provision as that in this charter. Some of the acts relied on in this bill, as reasons for not declaring dividends, would not of themselves reflect much, if any, upon the question. For example, it is difficult to see how the failure of officers of the company to make the reports required by chap. 109 of the Acts of 1902 (now sec. 94 of Art. 23 of the Code), can properly be used against the directors, to show negligence or that they were not informed as to the company's condition. That Act requires such officers as the State Treasurer may designate to make the report to him, and unless he brings it to their attention it would not be fair to draw any inference of neglect on the part of the directors, from the failure of officers to make such report, and surely the directors are not expected to go to the Treasurer of the State to ascertain the condition of the company with which they are connected. But in paragraph (11) there are such charges of negligence on the part of the directors in failing to inform themselves of the condition of the company before declaring the dividends, as demand some explanation from them, and we therefore think the demurrers to paragraphs (10) and (11) were properly overruled.

2. The demurrers to paragraphs (14) and (15) present some of the same objections as were referred to in considering those

two paragraphs (18) and (19) of the other bill. The loans mentioned in paragraph (15) amount to over $59,000, while the losses alleged by reason of them amount to only $32,466.10. As we said in the other case, we can see no reason why the plaintiffs cannot point out the precise loans by which the losses were incurred. They profess in the bill to be able to state the exact amount of the loss, and it is but fair to the defendants that such information be given.

We do not want to be understood as intimating that the defendants can be held responsible for loans to the Baltimore Construction and Building Company and Edward H. Glidden merely because they were endorsed by Pollock or Kohler, who were directors. The charter does not in terms prohibit the endorsement of notes, etc., by officers or employes of the company, and it cannot be extended to include such endorsements, unless the loans be made directly or indirectly for the benefit of such endorsers. In order to hold the directors liable under this provision of the charter, it must be shown that they consented directly or indirectly to loans to some officer or employee, and for that character of liability a director cannot be held simply because it is his duty to attend meetings of the board. It must be shown that any director sought to be held for such a loan consented thereto, directly or indirectly. In 10 *Cyc.* 879, it is said of a statute making directors liable for unlawful loans that; "If the statute imposes the liability on 'the directors assenting thereto,' obviously the creditor must allege and prove that the defendant did assent thereto." There are only two instances in the list of loans in which it is alleged that Thomas was at a meeting of the board which approved and ratified such loans (only amounting to $5,080), and yet he is sought to be held responsible under this statute for over $59,000 of loans. How they were ratified and approved is not shown but in order to show the consent of a director sought to be charged, who the bill shows was not present, there must be some more definite allegations than are to be found in this paragraph. So without further discussing

the subject, we are of opinion that the demurrer should have been sustained to paragraph (15).

> *Order overruling demurrers affirmed, excepting in so far as it overruled the demurrer to paragraph fifteen (15), and reversed as to that, and cause remanded for further proceedings. Each side to pay one-half the costs in this Court, the costs below to abide the result of the case.*