# POCOMOKE CITY NATIONAL BANK *vs.* JAMES M. CROCKETT, Receiver.

---

# JAMES M. CROCKETT, Receiver, *vs.* POCOMOKE CITY NATIONAL BANK.

*Corporate Charter—Legislative Amendment—Acceptance—*
*Building Association—Loan of Credit—Validity*
*of Transaction—Responsibility*
*of Directors.*

An amendment by the Legislature of a corporate charter, involving a change of the corporate name and the conferring of additional powers, is to be regarded as adopted and accepted by the corporation, after the use of the new name, and the exercise of the additional powers, for a long period of time, without objection by any director or stockholder, even though there was no formal acceptance at a stockholders' meeting.

p. 442

In the absence of fraud, a mere irregularity, which points to nothing worse than ignorance or carelessness, which prejudices the interest of no one, and is without any reasonable explanation looking to an ulterior motive, is not alone a sufficient ground, in a court of equity, for striking down an obligation which appears from the evidence to have been entered into in good faith by the parties thereto.                    p. 443

The evidence showing that a transaction was intended to be a borrowing of a certain sum from a bank by a building association, and a loan of the same amount by the association on the note of an individual, endorsed by a firm of which he was a member, *held* that there was no loan of credit by the association to the individual in violation of Code, art. 23, sec. 143, although the note of the individual, who was the cashier of the bank, was by mistake made to the bank and not to the association, it being however placed in the possession of the association, and although the proceeds of the note which the association

gave to the bank were credited on the books of the bank, not to the association, but to the borrowing firm, no check being given by the association on the bank to the borrowing firm or individual. pp. 443-446

Corporate directors are not liable for the consequences of unwise or indiscreet management, if their conduct is entirely due to mere default or mistakes of judgment, and the onus of proof of fraud, combination, or gross negligence, to render the directors personally liable, is upon the party making the charge, and the proof must be clear and manifest. p. 446

*Decided April 9th, 1924.*

Appeals from the Circuit Court for Worcester County, In Equity (DUER, J.).

Bill by James M. Crockett, Receiver for the Pocomoke Building and Loan Association, against the Pocomoke City National Bank, and Robert J. Lambden, John W. Ennis, J. Harry Young, Willard J. Stevenson, and Joshua W. Miles. From the decree rendered, the said receiver and the said bank separately appeal. Affirmed in part and reversed in part.

The causes were argued before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*James E. Ellegood* and *F. Leonard Wailes,* with whom were *Ellegood, Freeny & Wailes* on the brief, for the bank.

*George H. Myers,* for the receiver.

*George M. Upshur,* with whom were *Upshur & Upshur* on the brief, for Willard J. Stevenson.

*John W. Staton,* for J. Harry Young.

*Hooper S. Miles,* for Robert J. Lambden.

Adkins, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by James M. Crockett, receiver for the Pocomoke Building and Loan Association, against Robert J. Lambden, John W. Ennis, J. Harry Young, Willard J. Stevenson, Joshua M. Miles, attorney for John W. Ennis, and the Pocomoke City National Bank of Pocomoke City, Maryland.

The bill alleges the appointment of Crockett and one Charles O. Melvin as receivers of said association, in a suit of certain creditors against the association; the qualification of said receivers and the taking possession by them of the books and other assets of said association, and the subsequent death of Melvin, leaving Crockett as the surviving receiver. It further alleges that said association was incorporated on the 18th day of April, 1893, under the general incorporation laws of the State, and organized by the directors named in the certificate of incorporation, and that by-laws were adopted, a copy of the certificate of incorporation and of the by-laws being filed as exhibits; that on September 14th, 1920, the defendants, Ennis, Lambden, Young, and Stevenson, "acting or claiming to act as directors of said corporation," undertook to execute on behalf of said association a promissory note payable to the order of the defendant, the Pocomoke City National Bank, on demand, for the sum of nine thousand dollars; that said note was signed by said Robert J. Lambden, as secretary, and delivered to said Pocomoke City National Bank, but the said Pocomoke Building and Loan Association received no part of any of the proceeds of said note from said bank; "that on the contrary, your orator is advised, and believes, and, therefore, charges that the said note signed by the said Robert J. Lambden as secretary aforesaid was used by the said defendant, John W. Ennis, who was then and there also cashier of the said Pocomoke City National Bank, to replace in said bank either the personal obligation of the said John W. Ennis or of the partnership composed of the said John W. Ennis and others trading under the firm name of I. H. Merrill

Company, and that the said Ennis or his aforesaid partner-
ship, * * * received the whole of any consideration that was
paid by said bank on said alleged note; that at or about the
time of the delivery of said alleged note to the Pocomoke
City National Bank as aforesaid, the said Ennis deposited
with the said Robert J. Lambden, acting or claiming to act
as secretary of said Pocomoke Building and Loan Associa-
tion, a note executed by the said John W. Ennis and Minnie
M. Ennis, his wife, under date of September 4, 1920, pay-
able to the order of the Pocomoke City National Bank for
the sum of ten thousand dollars, which said note bears the
endorsement 'I. H. Merrill Company,' which shows a credit
of one thousand dollars under date of September 14, 1920,
the original of which said note, which has come into the pos-
session of your orator from the hands of the said Robert J.
Lambden, is herewith filed," etc.; that in or about the month
of January, 1922, numerous creditors of said Ennis and
wife and of said company discovered that they and it were
insolvent, and by agreement Joshua W. Miles, as attorney
for the said John W. Ennis, was authorized to collect all
the assets of said Ennis and wife and of said company, and
to distribute the same among the creditors in the order of
their legal priorities, and that said attorney has made such
distribution on the basis of twenty-nine per cent.; that plain-
tiff, without full information as to who was the lawful holder
of said last mentioned note, has filed a copy thereof with
said attorney so that it should receive its proper distributive
share from the proceeds of the property of said debtors, and
that said attorney now has in hand and has tendered himself
ready to pay over on account of said note to the party legally
entitled to the same the sum of $2,990.32; that there have
been payments made to said bank on the note signed by
Lambden as secretary of said association, by said Lambden
"by and with the advice, authority, and consent of the said
Ennis, Stevenson, and Young, claiming to act as directors
of said building and loan association," as follows: April 13,
1921, $1,300.00; May 4, 1921, $650.00; May 18, 1921,

$400.00; July 19, 1921, $900.00; Dec. 6, 1921, $550.00; Feb. 8, 1922, $650.00; Feb. 22, 1922, $475.00; March 9, 1922, $66.87; that the said Ennis, Lambden, Stevenson, and Young, claiming to act as directors of said association, were without authority under the charter and by-laws of the said association to bind it by any obligation such as was attempted in the said alleged note, and that said bank, through its cashier, the said Ennis, knew of the absence of such authority; that said note was issued solely for the use and benefit of the said Ennis, and given to the said Ennis to enable him to obtain credit or money thereon from said bank, all of which was known to the said bank through its cashier, Ennis; that said note, having been issued for the purpose aforesaid, is void, and all money belonging to said association paid on account thereof was wrongfully appropriated by said parties claiming or pretending to act as directors of said association; that the total assets of said association at the time of the execution of said note amounted to little more than double the amount of said note, and "that if the said Lambden, Ennis, Stevenson, and Young had authority as directors of said building and loan association to lend the credit of the said association to the said Ennis to the extent of nine thousand dollars, or to borrow from the Pocomoke City National Bank such sum of money to be loaned to the said Ennis, who was or claimed to be also the vice-president of the said building and loan association, then such loan under the circumstances aforesaid constituted gross negligence on the part of said Stevenson, Ennis, Young, and Lambden, which has resulted in serious loss to the said association as aforesaid."

The prayer of the bill is:

1. That said note to the bank be declared null and void as against said association.

2. That said Lambden, Ennis, Stevenson, Young and the Pocomoke City National Bank be required to repay to plaintiff the sum of $4,991.87 paid by the said Lambden from the funds of said association on account of said note

to the bank with interest on the several payments constituting said sum from their respective dates.

3.   That the court decree and determine who may be entitled to said sum now in the hands of said Joshua W. Miles, attorney.

4.   For further relief.

The bank answered, admitting the original charter of the association as set out in the bill, but averring that said charter was amended by chapter 347 of the Acts of 1906; neither admitting nor denying the allegations as to the organization and adoption of by-laws of the association : admitting the execution of the said note to the bank, but denying that the association received no part of the proceeds thereof, and denying that said note was used by Ennis to replace notes he had with the bank, or that Ennis or the I. H. Merrill Company received the full benefit of said loan, or any part thereof, and denying that the note for $10,000, dated September 4, 1920, bearing a credit of $1,000 on Sept. 14, 1920, was ever the property of the bank; denying that Ennis, Lambden, Stevenson, and Young were without authority under the charter and by-laws of the association to bind said association by an obligation of the character of the note signed by Lambden as secretary, and that the bank knew at the time it accepted said note that the directors of the association were without authority to execute or to authorize the execution of said obligation; denying that the note was issued for the benefit of Ennis, or to enable him to obtain credit or money thereon from the bank, or that such purpose was known to the bank; averring that if Ennis had any such knowledge, he did not disclose it to any officer or director of the bank; denying that if Lambden, Ennis, Stevenson, and Young had authority as directors of the association to lend the credit of the association to Ennis to the extent of $9,000, or to borrow such sum from the bank to be loaned Ennis, that such loan constituted gross negligence on the part of said directors.

Demurrers were filed by Ennis, Lambden, and Young, which were overruled; whereupon they answered, each denying allegations of the bill in so far as they charged wrongdoing or negligence to him; and all setting up the act amending the original charter. Stevenson answered, denying that he was ever a director, or that he had any participation in the transactions referred to in the bill. The answer of Joshua W. Miles admits that he is holding the amount of money mentioned in the bill and for the purpose therein stated.

The bank appealed from the decree holding the note from the association to it null and void; and the receiver took a cross appeal from the ruling that the directors could not be held accountable in this case. The two appeals are in one record.

There is no allegation of fraud in this bill, nor does the evidence disclose the slightest trace of it. The evidence does disclose many irregularities in the method of conducting the business of the association, and a glaring one on the part of the bank in the matter of crediting the proceeds of the note to it from the association. At the time of the transaction in question there had not been a stockholders' meeting of the association, so far as the minutes disclose, since July 13th, 1908, and the last recorded meeting of directors was June 25th, 1916. There were meetings of directors from time to time after that, but not regular meetings. The by-laws provided for the election by the directors of two examiners, whose duty it was "to examine and estimate the value of all properties offered as security for loans or advances and report in writing to the board of directors, and preform such other duties as may be prescribed by the constitution and by-laws or by order of the board of directors."

These by-laws were adopted under the original charter of the association, by which charter its purposes and powers were stated to be "to accumulate a fund for the benefit of its members, to borrow and loan money, to buy and sell real estate, and to do all other acts essential to the proper carry-

ing on of a building and loan association." By Chapter 347 of the Acts of 1906 the charter was amended in the following respects:

The name of the corporation was changed from "The Pocomoke City Building and Loan Association of Pocomoke City, Maryland," to "The Pocomoke Building and Loan Association"; its authorized capital stock was increased, and by section 7 it was provided:

> "That the following powers and privileges are also granted to said corporation: First, to purchase, invest in and sell any kind and all kinds of property, real, personal or mixed, and to execute deeds, conveyances, assignments and transfers thereof; second, to receive deposits of money, securities and other property from any person or corporation, and to accumulate the same, and to issue certificates of deposit therefor, payable at such times and on such terms and allowing such rates of interest therefor as may be agreed upon, not exceeding the legal rate of interest; provided such certificates or bonds do not at any time exceed twice the amount of the capital stock actually paid in; and third, to loan money on promissory notes, bills, obligations or other evidences of debt, and to borrow money at such rate of interest not to exceed the legal rate, and upon such terms as may be agreed upon, and to issue therefor the obligations or bonds of the said association, with or without coupons attached."

It is contended by plaintiff that the amendment by this act of the Legislature was never adopted or accepted by the association; but we concur in the view of the learned chancellor that the use of the new name, and the exercise of the additional powers granted, without objection by any director or stockholder, for a long period of time, amounted to an acceptance and adoption, even though there does not appear by the minutes to have been any formal acceptance at a stockholders' meeting.

To correctly decide the questions here involved, so far as they are between the bank and the association, requires that

substance and not form be regarded. In our opinion the court below erred in giving undue weight to the forms which the transaction assumed and to the irregularities which accompanied its progress. Where there is any evidence of fraud, or any reason to suspect that an irregularity cloaks a fraudulent design, or in any way aids in the accomplishment of a fraudulent or illegal purpose, then it should be most closely scrutinized. But in the absence of fraud, a mere irregularity, which points to nothing worse than ignorance or carelessness, which prejudices the interest of no one, and is without any reasonable explanation looking to an ulterior motive, is not alone a sufficient ground, in a court of equity, for striking down an obligation which appears from the evidence to have been entered into in good faith by the parties to it.

The uncontradicted evidence in the case shows:

That Ennis, the cashier of the bank, desiring to reduce or pay off his or his firm's indebtedness to the bank because of his position at the bank, about the first of September, 1920, applied to Lambden, the secretary of the association, for a loan of $10,000; that he was told by Lambden the association did not have the money, whereupon he suggested that the association borrow the money from the bank; that it had been the practice of the association for many years to borrow from the bank at the rate of five per cent. and to lend the money either on notes or mortgages at six cent., it having had as many as a hundred transactions of that sort with the bank; Lambden consulted with J. Harry Young, he and Ennis having for many years been the duly appointed examiners of the association, and they with Lambden having been in the habit of passing on loans; that Young approved the loan; that, in the meantime, between his application for the loan and its approval, on September 4th, 1920, Mrs. Ennis being about to leave home, Ennis had her sign with him a note for $10,000 on the form of the bank, neglecting to substitute the name of the association as payee in place of that of the bank which was printed in the form;

this note, with I. H. Merrill Company as endorser, was left with Lambden, who apparently failed to notice the mistake in the name of the payee, and on September 14th, 1920, having found that he needed only $9,000, Ennis wrote a credit of $1,000 on the note as of that date; that on the same day (September 14, 1920,) Lambden, as secretary of the association, signed a demand note for $9,000 from the association to the bank and handed it to Ennis as cashier of the bank; that the note from Ennis and wife was placed by Lambden in the safe of the association and was in the possession of the association until it was turned over to the plaintiff as receiver with other assets of the association; that this note was never owned by the bank or held by it as an asset; that the note was not entered by Lambden on the books of the association; that the note from the association to the bank was the same in form as all previous notes from the association to the bank; that the application by the association for the loan was referred by Ennis to the investing committee of the bank and approved by them, and was reported to the board of directors of the bank; that after the note was signed it was handed to Ennis; that the proceeds of the note were not credited on the books of the bank to the account of the association, but to that of I. H. Merrill Company on September 15, 1920, and checks of that company on the same day appear to have been given to the bank to pay notes due the bank by the company; that Ennis was the manager of this company and signed its checks; that payments on account of the note of the association to the bank at various times between April 13th, 1921, and March 9th, 1922, inclusive, amounting in all to $4,991.87, were made by checks of the association signed by Lambden as secretary and Stevenson as treasurer; that Stevenson received no salary from the association, and his duties as treasurer were confined to signing checks when presented to him by the secretary signed by him and with voucher attached; that he made no inquiry or investigation when checks were thus presented to him, but signed them as a

matter of course; that Stevenson was one of the assistant
cashiers of the bank and as such had access to its books and
papers; that Ennis and his firm had been for a number of
years borrowers from the association, and at one time pre-
vious to this occasion owed it in notes as much as $13,000,
which at this time had been paid off or reduced to a little
over $3,000; that Lambden and Young believed the note
for $9,000 signed by Ennis and his wife and endorsed by
I. H. Merrill Company to be good security for the loan;
that Ennis represented to them that he was expecting money
soon from the sale of some property and would only need
the borrowed money for sixty days; that the loan was made
both to accommodate Ennis and for what they thought was
the good of the association; that I. H. Merrill Company was
an old, well established firm and that no one apparently knew
it was in trouble until the failure in January, 1922; that
Ennis continued as cashier of the bank until December,
1921. In the opinion of the lower court, the transaction
between Ennis and the association was a loan of the credit
of it to him and was "just what the Legislature had in mind
and undertook to prevent when they passed section 143 of
art. 23 of the Code of Public General Laws."

We are unable to agree with this conclusion. In our opin-
ion the evidence shows that the transaction was intended to
be a borrowing by the association of $9,000 at five per cent.
on its note to the bank, and a loan of that amount at six
per cent. by the association on the note of Ennis and wife
endorsed by I. H. Merrill Company. To clarify the situa-
tion, let us consider for a moment what would be the legal
status of the matter if the name of the association had
been written in as payee, and the name of the bank stricken
out, in the note of Ennis and wife; and the proceeds of the
note of the association had been credited to it on the books
of the bank, and a check therefor had been given by the
association on the bank to I. H. Merrill Company.

We do not understand that it is seriously contended by
plaintiff that then it would not have been a valid transac-

tion, so far as the bank is concerned, if the chancellor's ruling, which we have approved, is correct, that the association must be held to have accepted the amended charter.

In the absence of any allegation or proof of fraud we hold, on the evidence in the case, that the transaction was, in legal effect, just as if its form had been in all respects as in the hypothetical case suggested. We find no fraudulent motive in the irregularities of form in the transaction, because there does not appear to have been the slightest necessity for deliberate resort to such irregularities in order to obtain the result. Unquestionably, Ennis could have obtained as a matter of course a check from the association if it had been credited with the proceeds of its note. The only person even suggested by plaintiff as one from whom Ennis might have designed to conceal anything is Stevenson. But there is no reason disclosed by the testimony why it was thought to be important to keep Stevenson in the dark as to the true nature of the transaction; or how, if that was important, Ennis expected to accomplish it by the method pursued, as Stevenson had full access to the books and papers of the bank.

We find no error in the decree appealed from in so far as it failed to hold the defendants, other than the bank, accountable. So far as Stevenson is concerned, he does not appear to have been in any way connected with the transaction. Young's only connection with it was the approving of the loan. Lambden also approved the loan and may be said to have been responsible for, or a party to, the irregularities referred to. But we have held that no one was prejudiced by these irregularities. As to Young and Lambden, then, it comes down to the question whether they were guilty of such negligence in approving the risk as to make them personally responsible.

In *Booth* v. *Robinson,* 55 Md. 419, it is said: "All the cases agree that directors are not liable for the consequences of unwise or indiscreet management, if their conduct is entirely due to mere default or mistakes of judgment; and

the onus of proof of fraud, combination, or gross negligence, to render the directors personally liable, is upon the party making the charge; and the proof must be clear and manifest." See also *Reus Loan Co. v. Conrad,* 101 Md. 224, and *Foutz* v. *Miller,* 112 Md. 458.

The case of *Reus Loan Co. v. Conrad, supra,* strikingly illustrates the degree of negligence necessary to impose personal liability upon directors who act in good faith.

We find no such negligence in this case, in the light of the facts as they appeared at the time the loan in this case was made.

It remains only to consider the question as to the application of the fund reserved by Joshua W. Miles, attorney. It follows from the views above expressed that in our opinion they should be applied to the note of Ennis and wife to the association, now held by the plaintiff for the benefit of the creditors and others interested in the assets of the association, and not, as held by the chancellor, for the benefit of the bank, the said note being properly an asset of the association. An order should be passed directing that note to be reformed by substituting the name of the association as payee in place of that of the bank.

The decree appealed from must be reversed in so far as it declares the note to the bank, signed by R. J. Lambden, secretary, to be null and void, and directs the bank to pay over to or bring into court, to be paid over to the plaintiff, the several sums of money paid by the said R. J. Lambden, secretary, to the bank on account of said note; and in so far as it directs the plaintiff to deliver to the bank the note of John W. Ennis and Minnie M. Ennis, his wife, endorsed by I. H. Merrill Company; and in so far as it directs the defendant, Joshua W. Miles, to pay to the bank all sums held by him representing the proportionate share distributed or to be distributed on account of said note in the liquidation or distribution of the property and assets of the said John W. Ennis, Minnie M. Ennis, and I. H. Merrill Company; and affirmed in so far as it holds the defendants, John

W. Ennis, J. Harry Young, Robert J. Lambden, and Willard J. Stevenson, free from liability as directors in this suit.

> *Decree affirmed in part and reversed in part, and cause remanded that a decree may be passed in accordance with the views expressed in the aforegoing opinion, costs to be paid by James M. Crockett, Receiver.*