DAVID PRITCHARD ET AL. *v*. WILLIAM H. MYERS, JR., ADMINISTRATOR, ET AL.

[No. 34, January Term, 1938.]

68

*Decided March 9th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*James E. Ingram, Jr.,* for the appellants.

*G. Elbert Marshall,* with whom was *H. Herbert Balch* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

David Pritchard and twenty-eight other creditors and depositors, or their representatives, of the Oxford Bank instituted on May 29th, 1937, in Talbot County, a suit in equity against Oliver S. Gallup, J. McKenny Willis, J. Frank Richardson, Jesse A. Delahay, Aubrey B. Harris, W. Graham Newnam, directors of the Oxford Bank, and William H. Myers, Jr., administrator of William H. Myers, and Hester Anne Kirby, executrix of Robert W. Kirby, the personal representatives of two other directors of the bank. The demurrer of all the defendants to the bill of complaint was sustained, and a decree passed which dismissed the bill. The appeal by the complainants is from this decree.

The bill of complaint was filed by certain creditors and depositors of the Oxford Bank, a body corporate of the State of Maryland, which had been engaged in the business of banking at Oxford, Maryland. The plaintiffs brought the suit as well for themselves as for all other creditors and depositors who were similarly situated. Their complaint averred that on and before January 7th, 1931, the bank had been engaged in the affairs of its business and had continued its operations until Decem-

ber 18th, 1934, when the bank closed its doors because, of its insolvency. In a proceeding then begun by the State of Maryland against the Oxford Bank, a receiver was appointed to liquidate the resources of the bank, and, after their liquidation, to distribute the proceeds among the creditors and other parties in interest under the supervision, direction, and control of the equity court, which had assumed jurisdiction for these purposes. The position and claims of the plaintiffs either as depositors and creditors, or as the personal representatives of such depositors and creditors, were established as subsisting on December 18th, 1934, by the reports filed in the proceedings in the receivership cause, which is known as No. 2092 Equity on the Equity Docket of the Circuit Court for Talbot County.

The directors, who served any portion of the period from January 7th, 1931, to December 18th, 1934, or their personal representatives in the cases of the two who have died, are made parties defendant. These directors did not all serve during the whole period, and the differences in their respective times of service cause them to fall into three separate groups. William H. Myers, Oliver S. Gallup, J. McKenny Willis, J. Frank Richardson, Jesse A. Delahay, and Robert W. Kirby constituted the board of directors from January 7th, 1931, to January 11th, 1933. From the end of this first period to August 6th, 1934, the six directors named and Aubrey B. Harris and Graham Newnam composed the second group. All the eight directors whose names have been given, with the exception of William H. Myers, were the seven directors who formed the directorate from August 6th, to December 18th, 1934.

The plaintiffs are shown to have been depositors and creditors during a long period before the day the bank closed its doors; and from January 7th, 1931, to that date these three separate groups of directors are charged, jointly and indiscriminately in point of time and without reference to their terms of office, with official misconduct which caused the plaintiffs serious money losses, whose

several amounts are not ascertainable by the facts alleged. All that appears is that on their claims, which have been proved and filed in the receivership proceedings, a first distribution dividend of forty per cent. of the amounts has been paid, and the final expected dividend is twenty-five per cent., which will leave a principal amount of thirty-five per centum of the entire sum claimed as the loss which is alleged to be chargeable to the official misconduct of the defendant directors.

The wrongful acts attributed to the defendant directors is that, since January 7th, 1931, until the bank defaulted and closed its doors, the defendants as directors knew or should have known that the bank was "totally insolvent, its capital stock and surplus impaired and lost during the times these complainants made and were making their deposits." In addition to the charges of neglect, the further allegations are that by their negligent discharge of official duties these directors represented the bank as safe, solvent, and prosperous and brought about its ruinous financial condition by (a) the publication of false statements of its financial condition; (b) the declaration and payment of illegal dividends on the capital stock without making reasonable inquiry as to the financial condition; (c) the negligent disobedience and disregard of the recommendations and demands of the state banking commissioner with respect to charging off depreciated securities and losses sustained by speculative accounts; (d) the listing of assets at grossly excessive values; and (e) the imprudent appropriation of funds in hazardous and insufficiently secured investments.

The conduct mentioned is averred to have induced the plaintiffs to deposit and keep their funds with the bank in the belief that the financial position of the bank was sound and that the alleged misconduct of the directors and the insolvency and financial condition of the bank were not known to the complainants until after they had obtained permission of the court in May, 1935, to make an examination of the affairs of the bank before the court had assumed jurisdiction under the receivership.

The bill of complaint concludes with the statement that the receiver of the bank had been requested to proceed against the directors for the benefit of the depositors and creditors, but, after the findings and report of master and special counsel who had been appointed by the chancellor of the court in which the receivership is being administered to make an investigation of the affairs of the bank and the liability of the directors, the receiver had refused to act. The report is filed with the bill of complaint and is made a part thereof.

The allegations in the charging portion of the bill of complaint of the facts upon which the complainants base their prayer for relief are as general as the preceding statements of the bill. Although the gravamen of the bill is official misfeasance equivalent to fraud, the averments actually made are the conclusions of the pleaders from the facts assumed to exist within their knowledge, but, in order to know if these facts are sufficient for the conclusions, the facts must be sufficiently disclosed by the bill of complaint. *Lamm v. Burrell*, 69 Md. 272, 274, 14 A. 682; *Fried v. Burk*, 128 Md. 548, 554, 555, 97 A. 909; *Boyd v. Shirk*, 125 Md. 175, 179-181, 93 A. 417.

The rules of equity pleading require that every fact and circumstance necessary to entitle the plaintiff to relief must be clearly and definitely, certainly, and specifically, stated in the bill of complaint. If fraud be the ground of relief, the rules are rigorous in their exaction of a distinct and specific statement of the facts and circumstances which constitute the fraud. The soundness and necessity of these requirements of good pleading are strikingly illustrated by the record at bar. While the bill of complaint, apart from the exhibit, is vague and general, the exhibit is precise, specific, and clear in reference to the grounds of relief relied on in the bill. The pleaders have made the exhibit, without any reservations, a part of the bill of complaint, and, thus incorporated, the general allegations of the bill of complaint are taken as qualified and limited by the exhibit, and, to the extent of conflict between the material averments of

the bill and the exhibit, the exhibit will prevail. *Peabody v. George's Creek C. & I. Co.*, 120 Md. 659, 666, 87 A. 1097; *Ridgely v. Wilmer*, 97 Md. 725, 729, 55 A. 488; *Wilmer v. Ridgely*, 131 Md. 501, 503, 102 A. 745; *Schuler v. Southern Iron etc. Co.*, 77 N. J. Eq. 60, 75 A. 552; *Price v. Solberg*, 269 Ill. 459, 109 N. E. 1024; *Briggs v. Fleming*, 112 Ind. 313, 14 N. E. 86; *Roller v. Murray*, 107 Va. 527, 59, S. E. 421.

The exhibit is the report of special counsel who was appointed by the court in which the receivership of the bank is in course of administration. The court passed the order so that the court and receiver might be advised whether any cause of action exists against the officers and directors of the bank because of unlawful acts, omissions, or mismanagement in the operation of the bank. The examination and report began with December 31st, 1929, and covered the entire period to the receivership. From this official report it appears that the bank was open until February 25th, 1935. It remained closed until it passed into the custody of a conservator under chapter 46 of the Acts of 1933, until the pending receivership began pursuant to the provisions of Code 1924, art. 11, sec. 8, Code (Supp. 1935), art. 11, secs. 8A and 9B. The receiver is the bank commissioner of the State of Maryland and the report is the result of an examination of the records of the bank with the co-operation of the bank commissioner and his official assistants. The report is lengthy and presents a statement and an analysis of the financial condition of the bank with reference to its assets and liabilities, and the conduct and responsibility in office of its directors. In brief, the report is a particular denial and refutation of the general accusatory allegations of the body of the bill of complaint, with the exception of the charge of the declaration and payment of unearned dividends. In respect of the bare charge in the body of the bill of complaint of "illegally declaring and paying dividends on its capital stock without making reasonable inquiry as to the condition of said bank," the report supplies the requisite certainty

74

and definiteness of good pleading by stating the number, the times, the rate, and the aggregate amounts of the dividends declared and paid, with the facts which made improper and illegal the declarations and payments of these dividends and the directors liable.

In respect to the other charges, the report exonerates the directors. It holds the present situation, except as to the payment of dividends, not to be due to any criminal or wrongful motive, nor to lack of supervision, but to bad judgment in investments, unwise management, and lack of capacity on the part of the directors, which, however, was not such gross negligence as would amount to a breach of trust from which resulted losses for which the directors could be held personably liable.

The examination and report were made at the instance and for the information of the court. It was an official paper whose statements are neither impeached nor questioned nor its conclusions assailed nor avoided by the pleaders, who accredit the report and its findings of fact by making it a part of their bill of complaint. The plaintiffs are assumed to know the facts requisite to their right to equitable relief, and so are under the burden of setting forth such facts, subject to the general principle of pleading that, in the construction of pleadings, the intendments are to be taken against the pleader. *Maenner v. Carroll*, 46 Md. 193, 214, 215; *Schuler v. Southern Iron & Steel Co.*, 77 N. J. Eq. 60, 75 A. 552, 554.

While the report complemented with particulars some of the general statements of the charging portion of the bill of complaint, it left many of the allegations as presented. For instance, it does not appear from the bill and exhibit what is the amount claimed to be due a single one of the plaintiffs, or when or in what manner his undisclosed debt arose. Nor is there a specific instance stated of a single wrongful or negligent act of the directors which resulted in any loss to the bank, except in regard to the payment of the dividends. The defendants fall into three different groups with respect to their respective periods of service as directors. Five served dur-

ing the entire period from January 7th, 1931, until December 18th, 1934; one until August 6th, 1934, and two from January 11th, 1933, until the end. It is therefore clear that, as the averments cover the whole period without discrimination in reference to the directors, the allegations cannot be so applied because of the different periods of service of the defendants. To illustrate the importance of clearness and certainty in pleading, the exhibit discloses that the dividends of the year 1931 were the only ones declared, and two of the defendants did not become directors until January, 1933. Again, the accusation is made that losses were sustained in investments in securities of a hazardous and speculative nature, but the investments made or securities acquired are not given, nor are the times of their acquisition stated, nor the names of the directors who acted in the matter. The defendant who ceased to be a director cannot be made liable for subsequent acts, nor can those who became directors be liable for what occurred before they were on the board, unless proper allegations are made to show ratification or subsequent neglect of duty by such directors. *Supra; Emerson v. Gaither,* 103 Md. 564, 64 A. 26; *Murphy v. Penniman,* 105 Md. 452, 66 A. 282; *Gaither v. Bauernschmidt,* 108 Md. 1, 8, 69 A. 425. See *Fisher v. Parr,* 92 Md. 245, 268, 48 A. 621.

On these allegations general relief is prayed, and the prayer for special relief is that the amount of loss sustained by the plaintiffs through the defaults of the directors be ascertained with respect to every one of the defendants, and that these severally account therefor to the plaintiffs and pay the amount to the receiver of the bank, in order that it may be distributed by the receiver in accordance with law.

The indicated defects of pleading will prevent the bill at bar from being further entertained unless corrections may be made by amendment. The bank is insolvent. Its affairs are in process of liquidation under a statutory receivership. So, by paragraph 3 of section 87 of article 23 of the Code (Supp. 1935), the liability of directors

for the dividends declared when their corporation is insolvent "shall be collectible by the receiver or other person winding up its affairs, as an asset of said corporation." Again, the fact that the corporation is an insolvent bank, and in the course of liquidation, under the jurisdiction of equity, with the bank commissioner of Maryland as its statutory receiver, pursuant to the provisions of the Code, assures a conversion of all the assets of the corporation for the benefit of all parties in interest. Code (Supp. 1935) art. 11, secs. 9-11; Code, art. 11, sec. 10; article 23, sections 92-95.

With the improperly declared dividends seen to be the function of the receiver of the bank to recover, the question arises, why should the same receiver not enforce the alleged liability of the directors for breach of duty? The answer requires an examination of the relative legal relations involved. The relation between a corporation, which is engaged in the banking business, and a person who puts money into the bank on an ordinary deposit, is that of debtor and creditor, and their relation is purely a legal one, with no question of trust. *Hardy & Bros. v. Chesapeake Bank,* 51 Md. 562, 585;; *Colton v. Drovers' Bldg. Assn.,* 90 Md. 85, 89, 45 A. 23; *First Denton Nat. Bank v. Kenney,* 116 Md. 24, 29, 30, 61 A. 227. The rights of the depositor and the liability of the bank are contractual, and all that the depositor may enforce is the payment by the bank of the amount of the deposit according to his order. On the insolvency of the bank the common depositors and creditors are entitled to have the assets of the bank applied to the satisfaction of the obligations of the bank, and their claims to be paid to the extent the assets of the bank can be equitably made available. All the assets of the bank, of whatever nature and kind, are dedicated to the satisfaction of the creditors, and are so to be used in accordance with their respective rights.

On the other hand, the relation between a corporation and its directors is generally that of principal and agent, and is within the rules governing transactions between

fiduciaries and their *cestuis que trustent*. *Cumberland Coal & Iron Co. v. Parish*, 42 Md. 598, 599, 605-607; *Booth v. Robinson*, 55 Md. 419, 436, 437-439. If, therefore, the directors commit a breach of duty in discharging their functions, they are responsible to the corporation, and not to the creditors, and the right of action for the breach, and the damages recoverable or recovered, are assets of the corporation. The equities of the corporate creditors are to be sought and obtained through the medium of the corporate entity. *France's Principles of Corporation Law*, (2nd Ed.), pp. 107, 108. Should, however, the corporation be insolvent and contemplating the liquidation of its affairs, its directors become bound as trustees for all the creditors and stockholders, and must so use, conserve, and apply the corporate property. *James Clark Co. v. Colton*, 91 Md. 195, 204-215, 46 A. 386. See Code, art. 23, sec. 95.

Thus, if the directors or managers of a corporation cause loss by either failing to perform their duties in accordance with statutory requirements, or with reasonable skill and care and, so, neglect to exercise that degree of diligence and prudence in the management of the corporation and the supervision of its affairs which ordinarily skillful and prudent men generally exercise in that situation under like circumstances, the directors or managers are personally liable, accordingly as they are severally or jointly negligent or guilty of wrongful conduct, and a court of equity has jurisdiction of a bill filed by the corporation, or its receiver, if the corporation be in course of liquidation or insolvent, to enforce the personal liability of the directors or managers. *Burkhart v. Smith*, 161 Md. 398, 403, 404, 157 A. 299; *Emerson v. Gaither*, 103 Md. 564, 568-572, 64 A. 26; *Murphy v. Penniman*, 105 Md. 452, 457-460, 66 A. 282; *Thomas v. Penniman*, 105 Md. 475, 476, 66 A. 291; *Gaither, Receiver, v. Bauernschmidt*, 108 Md. 1, 69 A. 425; *Foutz v. Miller*, 112 Md. 458, 461, 76 A. 1111; *Carrington v. Basshor Co.*, 118 Md. 419, 431, 84 A. 746; *France on Corporation Law* (2nd Ed.), pp. 106-111; *Brune, Maryland Corporation Law*,

pp. 156-158; *Ballentine, Private Corporations,* secs. 114-120; See *Crockett v. National Bank,* 145 Md. 435, 446, 447, 125 A. 712. In the event the corporation or its receiver, as the case may be, shall refuse to enforce the liability of the directors or managers, this default of the primary party to complain and enforce the liability of the directors will permit the stockholders or the creditors of the corporation to institute the suit, provided the shareholders or creditors shall allege and show that they have suffered loss by reason of the wrongs complained of, and that the corporation or receiver has failed or refused to take the proper steps for the redress of the wrong. *Booth v. Robinson,* 55 Md. 419, 438, 439; *Fisher v. Parr,* 92 Md. 245, 261, 48 A. 621; *Matthews v. Headley Chocolate Co.,* 130 Md. 523, 536, 539, 100 A. 645; *Morse on Banks and Banking* (6th Ed.) sec. 129; *Saunders v. Bank,* 113 Va. 656, 75 S. E. 94; *Murrell v. Traders' etc. Bank,* 113 Va. 665, 75 S. E. 97; *Ellis v. Mercantile Co.,* 103 Miss. 560, 60 So. 649; *Savings Bank v. Caperton,* 87 Ky. 306-311, 8 S. W. 885; *Kroeger v. Garkie,* Mo. App., 274 S. W. 478; *Allen v. Cochran,* 160 La. 425, 107 So. 292, 459.

In the present case the bill of complaint is drawn on the theory that whatever losses are shown and recovered should be decreed to be paid the present receiver of the Oxford Bank for distribution by him in accordance with law. The bill of complaint attempts to justify its inception on the allegation that the receiver had been requested, but refused, to institute an action against the directors for the benefit and reimbursement of the depositors and creditors. It is further stated that this refusal was based upon the report of the special counsel.

The court is of the opinion that these allegations are insufficient. The receiver is the officer of the court, and acts under its supervision and by its direction. The refusal of the receiver was not the act of the court, but was subject to the court's review and control. The plaintiffs at bar are not shown to have invoked the court's consideration and decision. Nor does it appear that the

receiver's refusal was brought to the court's attention. The orderly course is to present the question on petition and hearing in the pending receivership cause, and thus obtain the court's judgment and order. There can be no question that the receiver will proceed in pursuance of the instructions given. In this manner, the jurisdiction of the court will be retained, a multiplicity of suits averted, and the rights and interests of all parties concerned enforced and protected. See *Murphy v. Penniman,* 105 Md. 452, 456, 66 A. 282; *Miller's Equity Proc.,* sec. 618; *High on Receivers* (4th Ed.) secs. 200, 208; *Clark on Receivers* (2nd Ed.) secs. 583, 601; *Tardy's Smith on Receivers* (2nd Ed.) sec. 349.

For the reasons here stated, the decree in this cause will be affirmed, with costs to the appellees, but without prejudice to the rights of the appellants to proceed in accordance with the views expressed.

> *Decree affirmed, with costs, without prejudice to further proceedings in the receivership case, in conformity with this opinion.*