707 A.2d 422

**Janice WITTMAN**

v.

**Edward A. CROOKE, et al.**

**No. 769, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

March 27, 1998.

370

Daniel Hume (Clinton R. Black, IV, Margaret L. Argent and Thomas & Libowitz, P.A., on the brief), Baltimore, for appellant.

David Clarke, Jr., Washington, DC (Francis B. Burch, Jr., Roger D. Redden, Kathleen A. Ellis and Piper & Marbury L.L.P., on the brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and SONNER, J., and THEODORE G. BLOOM, Judge (retired), Specially Assigned.

MURPHY, Chief Judge.

Janice Wittman, appellant, owns 300 shares of stock in the Baltimore Gas and Electric Company (BGE).[1] On September 25, 1995, BGE announced that it had entered into a merger agreement with the Potomac Electric Power Company (PEP-CO). In the Circuit Court for Baltimore County on that same day, appellant filed a complaint against BGE's board of directors, appellees, alleging that they had breached their duty of care and their duty of loyalty by approving the merger with PEPCO. Appellant's claims were based on the theory that, since each director stood a chance of being named to the new company's board, all of BGE's directors were prohibited from deciding whether to recommend the merger. She also alleged that the investment advisors retained by the board, Goldman Sachs & Co. (Goldman), were "interested" because Goldman stood to earn $8,500,000 more by recommending the merger than by advising against it.

Appellant twice amended her original complaint to correct certain errors and to add a claim that appellees breached their duty of candor to the shareholders. This claim was based upon a draft proxy statement that BGE and PEPCO filed with the Securities and Exchange Commission (SEC) on December 7, 1995.[2] The second amended complaint was dismissed on March 26, 1996 when the Honorable J. Norris Byrnes conclud-

---

1.   There are about 147,526,700 shares of BGE common stock owned by other persons.

2.   After several revisions, on February 9, 1996, a final proxy statement concerning the merger was filed with the SEC and distributed to BGE's shareholders.

ed that appellant had failed to state a claim for breach of either the duty of loyalty or the duty of care.

As to the duty of loyalty, Judge Byrnes held that the prospect of being an officer or director in a bigger, more prestigious company is not "a sufficient fact to generate an enrichment issue or ... a disloyalty issue." As to the duty of care, Judge Byrnes held that appellant did not allege facts sufficient to overcome the presumption of correctness afforded appellees by the Business Judgment Rule. Moreover, the allegation that the board's financial advisor, Goldman, acted solely out of greed was "a conclusion not supported by facts" and not "a fair inference to draw under these circumstances without more." Judge Byrnes also held that appellant's duty of candor claim "is unsupported factually, or does not rise."

On March 29, 1996, at a special meeting of BGE's stockholders, the merger was approved by more than 97% of the BGE common stock shareholders who voted. On May 3, 1996, appellant filed a third amended complaint, and the appellees again moved to dismiss. On October 3, 1996, Judge Byrnes once more held that appellant had failed to state a claim, concluding that "under the facts of this case, as a matter of law, the fact that several of the directors were going to become directors in the emerging company is not a special benefit as that term is used ..." Judge Byrnes readopted his March ruling that appellant had failed to plead facts sufficient to state a claim for a breach of the duties of loyalty and care. He also concluded, "In my judgment there was, as a matter of law, full disclosure or sufficient disclosure ..."

On October 9, 1996, appellant's counsel filed an application for attorney's fees and costs. On February 28, 1997, Judge Byrnes rejected that request. In this appeal, the following questions are presented for our review:

I. Are directors interested where at the time of the board meeting to vote upon the transaction, each director has a possibility of receiving a substantial benefit from supporting the transaction, including the possibility of entrenching him or herself?

II. Are acts by interested corporate directors void, or voidable?

III. To the extent acts by interested directors are voidable, may such acts be cured by a shareholder vote approving the transaction?

IV. To the extent acts by interested directors are voidable, may such acts be cured where the directors did not act in good faith or failed to reach an informed business judgment?

V. Can interested directors show, as a matter of law, either good faith or an informed business judgment when their decisions purportedly depend upon advisors who were conflicted?

VI. Are the plaintiff's attorneys entitled to an interim award of attorney's fees and costs where the record evidence establishes that the plaintiff's complaint presumptively caused material, curative proxy disclosures?

For the reasons that follow, we shall affirm the judgments of the circuit court.

# I

Appellant argues that Judge Byrnes erred in holding that none of the appellees had conflicts when they approved the planned merger with PEPCO. According to appellant, during the negotiations between BGE and PEPCO, appellees made the decision to trade a majority of the share price premium that BGE then enjoyed over PEPCO, in order to obtain more control over the new corporation.[3] As appellant sees it,

---

3. The new corporation would have nine directors who had served on BGE's board, and seven who had served on PEPCO's board. BGE Chairman of the Board and Chief Executive Officer would (1) become Chief Executive Officer of the new corporation, and (2) succeed PEPCO's Chairman as Chairman of the new corporation, one year after closing. BGE's President and Chief Operating Officer was to be named Vice Chairman as well as Chairman of the company's non-utility subsidiaries.

because each appellee could receive a substantial benefit from supporting the transaction (including the possibility of "entrenching" himself or herself on the board of the new corporation), all of appellees were disqualified from recommending the merger. We agree with Judge Byrnes that there is no merit to this argument.

■ In determining whether the interest of appellees was in conflict with the interest of the shareholders, appellant argues that we should apply the law of trusts. We decline to do so.

> [T]he extent of the duty of loyalty is not necessarily the same in all fiduciary relations, and what constitutes a violation of duty by one kind of fiduciary does not necessarily constitute a violation of duty by another kind of fiduciary. The duty of loyalty owed by a trustee to his beneficiaries, for example, ordinarily is more intense than that owed by an agent to his principal, or that owed by a corporate director to the corporation.

*Parish v. Maryland and Virginia Milk Producers Ass'n, Inc.*, 261 Md. 618, 680–81, 277 A.2d 19 *cert denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971), *quoting* V. Scott, *Law of Trusts* § 495, 3534 (3d ed.1967).

■ We reject appellant's argument that the opportunity for a position on the board of directors of the new corporation is sufficient to cause the kind of conflict of interest that cannot be ratified by the shareholders. In *Cinerama v. Technicolor, Inc.*, 663 A.2d 1134, 1154 (Del.Ch.1994), the court stated, "It is clear under the language of the [Delaware equivalent of MD.CODE ANN., CORPS & ASS'NS § 2–419 (dealing with interested director transactions) ] that the alleged hope of better employment opportunities does not constitute the kind of interest covered." In *Sullivan v. Easco Corp.*, 656 F.Supp. 531, 535 (D.Md.1987), the United States District Court for the District of Maryland held that the adoption of employment contracts for the corporation's directors and its CEO, in response to a hostile takeover threat, did not violate Section 2–419.

■■■■ Under the Business Judgment Rule, there is a presumption that directors of a corporation acted in good faith and in the best interest of the corporation. *Zimmerman v. Bell,* 800 F.2d 386, 392 (4th Cir.1986)(applying Maryland law). "In order to rebut a business judgment claim, the party challenging the validity of a board's actions must produce evidence sufficient to rebut this presumption ..." *NCR Corp. v. AT & T Co.,* 761 F.Supp. 475, 491 (S.D.Ohio 1991)(applying Maryland law).

> It is, of course, "well established that courts generally will not interfere with the internal management of a corporation" and that the "conduct of the corporation's affairs are placed in the hands of the board of directors and if the majority of the board properly exercises its business judgment, the directors are not ordinarily liable."

*Devereux v. Berger,* 264 Md. 20, 32, 284 A.2d 605 (1971) *(quoting Parish v. Maryland and Virginia Milk Producers Association,* 250 Md. 24, 74, 242 A.2d 512 (1968)). This Court has held that

> [i]f the corporate directors' conduct is authorized, a showing must be made of fraud, self-dealing or unconscionable conduct to justify judicial review. This presents an issue of law rather than of fact ... [D]irectors of a corporation ... are not expected to be incapable of error. All that is required is that persons in such positions act reasonably and in good faith in carrying out their duties ...

*Black v. Fox Hills North Community Association, Inc.* 90 Md.App. 75, 82, 599 A.2d 1228 (1992) *(quoting Papalexiou v. Tower West Condominium* 167 N.J.Super. 516, 401 A.2d 280, 285–286 (Ch. Div.1979)).

■■■■ There is simply no evidence that appellees failed to act in good faith. As Judge Byrnes pointed out,

> [the directors] have a duty of loyalty to the Gas and Electric Company and shareholders to do their very best for them in this merger, which they conclude is very good for the company ....there's plenty of information about how, in this world today, how [BGE] needed to get bigger, they

needed to expand, because in the long run it was going to save money for the people who are in their territories. I mean, they had all this information and to suggest that now they're going to vote on [whether to merge with PEPCO] and because one of them says, hey, I could be on the board of some big company as opposed to the Gas and Electric, which is not small, I'm going to go for this deal whether I like it or not, ... and to say that that is evidence enough to file a lawsuit....

The fact that many of the appellees were likely to become directors of the new corporation did not justify judicial intervention. Appellant is unable to overcome the presumption that appellees acted in good faith and in the best interests of the corporation.

## II & III & IV

▮▮▮ Appellant argues that, because the appellees are "interested" parties, their breach of the duty of loyalty could not be ratified by a shareholder vote. There is no merit in this argument. The proxy statement made full disclosure to the shareholders, and they ratified the transaction. Maryland has long recognized the proposition that a board of directors is not "liable to the stockholders for acts ratified by them." *Coffman v. Maryland Publishing Co.*, 167 Md. 275, 289, 173 A. 248 (1934).

Transactions between a corporation and any of its directors are not void or voidable as long as the transactions are disclosed to the shareholders prior to ratification by the majority of disinterested stockholders. MD.CODE. ANN., CORPS & ASS'NS § 2–419 (1993). *See also Billman v. State of Maryland Deposit Ins. Fund Corp.*, 88 Md.App. 79, 109, 593 A.2d 684 (1991). In *Coffman v. Maryland Publishing Co., supra*, after the controlling shareholder of the corporation loaned money to the corporation and received as security a deed of trust on all of the property and assets of the corporation, a minority shareholder sued to have the debt disallowed and the deed of trust declared null and void. After recogniz-

ing that a minority shareholder is entitled to relief if officers and directors bankrupt the corporation "for purposes of their own" or "to promote their personal interest at the expense of the stockholders," *id.* at 288–89, 173 A. 248, the Court held that the officers and directors could not be "liable to the stockholders for acts ratified by them." *Id.* at 289, 173 A. 248. We agree with Judge Byrnes' conclusion that

> [appellant] argues that BG & E could have gotten a better deal. But that is really not a cause of action. Maybe they could have. Maybe they couldn't have. But that doesn't constitute a cause of action. That's something that stockholders can decide.
>
> What would get the court to intervene would be evidence of facts of the board and/or management violating its duty of loyalty and duty of due care.

We are persuaded that everything about which appellant complains could be, and was, ratified by a stockholder vote that occurred after a full and fair disclosure to the stockholders.

## V

■ Appellant also argues that appellees breached their duty of care when they relied on the advice of Goldman, whom she claims was an interested financial advisor. The negotiation between BGE and PEPCO took place over seven months. Goldman examined several other utility companies throughout the northeast region before determining that PEPCO was the most suitable candidate with whom BGE could merge. We agree with Judge Byrnes' statement that

> ... to say that they just [approved the merger] because they want to make 8 million dollars, well, there has to be more than that. That's a conclusion that is not supported by facts. And I don't think that is a fair inference to draw under these circumstances.

Moreover, even if we were to agree with appellant that appellees should not have relied on the advice of an "interested" adviser, the stockholder vote ratified the transaction and

therefore extinguished appellant's duty of care claim. MD. CODE. ANN., CORPS & ASS'NS § 2–419 (1993).

## VI

Appellant's final argument is that her counsel were entitled to an award of attorney fees and costs because it was her complaint that triggered curative proxy disclosures. According to appellant, the final proxy statement contained substantial additional disclosures that were included because of her second amended complaint.

■■■■ The standards applied to determine whether a losing plaintiff is entitled to attorney's fees from a defendant are:

(1) Was the suit meritorious when filed?

(2) Did the defendants take "action producing benefit to the corporation [or its shareholder] before a judicial result was achieved?"

(3) Was the "resulting corporate benefit ... causally related to the lawsuit?"

*Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876 (Del. 1980). A claim is meritorious "if it can withstand a motion to dismiss on the pleadings." *Chrysler Corp. v. Dann*, 223 A.2d 384, 387 (Del.1966). No award will be made if the action was simply "a series of unjustified and unprovable charges of wrongdoing to the disadvantage of the corporation." *Id.*

■■■ Judge Byrnes was not required to hold an evidentiary hearing on the counsel fee issue. The record shows that he carefully considered each of the appropriate factors before making the following ruling:

In my judgment the suit was not meritorious when it was filed, and even if I accept [that] some of the changes that appeared in the final version of the proxy were suggestions that plaintiffs made, it is undisputed that these very changes were also recommended by the SEC .... there was nothing that the [appellant] suggested that was not included by the SEC or was not already in the document prepared by the [appellees] and their agents.... I also

find that the benefit that arose because of the changes to the proxy statement were not causally related to the lawsuit. If anything, it was mere happenstance.

We recognize that there are cases in which an award was made to counsel for a party that did not prevail on the merits. Here, however, counsel fees are being sought on behalf of a plaintiff whose case was dismissed for failure to state a claim. Judge Byrnes neither erred nor abused his discretion when he decided that "the suit was not meritorious when it was filed...."

**JUDGMENTS AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**