**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN W. LYON,
<u>Plaintiff-Appellant,</u>

v.

LARRY A. CAMPBELL; EDWARD W.
STORKE; ROBERT R. COOK,
<u>Defendants-Appellees.</u>

No. 99-2455

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-98-1129-S)

Argued: May 4, 2000

Decided: July 19, 2000

Before WILKINSON, Chief Judge, and NIEMEYER and
MICHAEL, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Barry Coburn, COBURN & SCHERTLER, Washington,
D.C., for Appellant. Gerard Patrick Martin, MARTIN, SNYDER &
BERNSTEIN, P.A., Baltimore, Maryland, for Appellees. **ON
BRIEF:** Steven F. Wrobel, MARTIN, SNYDER & BERNSTEIN,
P.A., Baltimore, Maryland; Thomas J. Zagami, HODES, ULMAN,
PESSIN & KATZ, P.A., Towson, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John Lyon, a fifty percent shareholder of ICE, Inc. (ICE), brought this diversity action against Larry Campbell, Edward Storke, and Robert Cook, the three directors of L-C, Inc. (L-C), a company wholly owned by ICE. Lyon alleges that the defendants committed various wrongs in connection with the sale of a tract of land owned by L-C. The district court (1) dismissed Lyon's implied contract claim, (2) granted summary judgment to the defendants on Lyon's claims that they breached their fiduciary duties and violated Maryland's Corporations and Associations Code, and (3) denied Lyon's motion to file a second amended complaint. We affirm the dismissal of the contract claim, vacate the award of summary judgment on the other claims, and affirm the denial of the motion to amend.

I.

We recite the facts in the light most favorable to Lyon, the nonmovant in the summary judgment proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Lyon and Campbell were involved together in business deals for many years. According to the district court, the two men are now enveloped in a"cloud of acrimony." Lyon v. Campbell, Civ. No. S 98-1129, mem. op. at 1 (D. Md. Oct. 1, 1999). In 1971 Lyon and Campbell formed ICE, a holding company. It appears that Lyon still owns a fifty percent share of ICE and that Campbell owns the other fifty percent. L-C is wholly owned by ICE. Lyon was on the board of directors of L-C until May 1995. Campbell and Storke have continued to serve as directors of L-C, and Cook became a director (replacing Lyon) in May 1995.

In 1974 L-C bought (for $495,000) an 80-acre tract of land called Oxen Cove, which is located partly in Prince George's County, Maryland, and partly in the District of Columbia. L-C bought the Oxen

2

Cove property for the purpose of operating a landfill, but the company was unable to obtain the necessary permits. For the next twenty years Lyon and Campbell tried without success to sell Oxen Cove. Finally, in January 1995 a representative of Corrections Corporation of America (CCA) contacted Lyon, advising him that CCA was interested in the property for a prison site. Later that month Lyon received a proposed option contract from CCA that would have allowed CCA to buy Oxen Cove for $2.28 million. On January 18, 1995, Lyon wrote to Campbell and Storke, forwarding CCA's proposal and requesting a special meeting of the board of directors of L-C and ICE so that CCA's interest in buying the property could be explored. In a reply to Lyon, dated February 28, 1995, Campbell said that CCA's proposed terms, especially the price, were unacceptable. Campbell believed that the "asking price for the property should be in the area of $6-1/2 to $7 million."

The L-C board of directors (Lyon, Campbell, and Storke) finally met on April 17, 1995, to consider the option contract proposed by CCA. Early in the meeting Campbell expressed his concerns about CCA's offering price and the duration of the proposed option. Only at the end of the meeting when Storke made a motion to reject CCA's current proposal, did Lyon say he was "willing to accept the contract as offered." Lyon quickly added, however, that he was willing, in order to achieve unanimity, to accept Campbell and Storke's suggestion that L-C hire a real estate consultant, who would assist the company in evaluating CCA's proposal and in negotiating with CCA. The L-C board then authorized Campbell to contact a consultant for a fee proposal, and the consultant was engaged within a few days.

At the April 17, 1995, L-C board meeting, Storke asked Lyon if he had sold or collateralized his ICE shares. Lyon responded that he had not. That was not true. At the time of the L-C board meeting Lyon was the defendant in an adversary proceeding in the bankruptcy of Excavation Construction, Inc. (ECI), a "Lyon-Campbell business venture that failed." Lyon v. Campbell, Civ. Action No. S 98-1129, mem. op. at 2 (D. Md. Oct. 1, 1999). The trustee alleged that Lyon had guaranteed substantial obligations that another company owed to the debtor (ECI), and the trustee sought to collect on Lyon's guarantee. Lyon admits that on April 11, 1995 (six days before the L-C board meeting), he and the trustee orally advised the bankruptcy judge in the

3

ECI case that the adversary proceeding against Lyon had been settled. See Br. of Appellant at 8. Although Lyon and the trustee did not sign a settlement agreement until October 6, 1995, the agreement reflected that Lyon would (1) use his best efforts to sell Oxen Cove, (2) pay over a substantial portion of the sale proceeds (up to $1 million) to the trustee, and (3) pledge his stock in ICE to the trustee as security.

On April 26, 1995, nine days after the April 17, 1995, meeting of the board of directors of L-C, Lyon advised his fellow director, Campbell, that he had pledged his ICE stock to the ECI trustee. Campbell and Storke (acting as directors of ICE) reacted swiftly: a special meeting of the ICE board was called for May 15, 1995. At that meeting Campbell and Storke removed Lyon as a director of L-C and elected Cook in his place. Campbell said this action was taken against Lyon because he "no longer shared the long term business interest of L-C" as a result of his pledge of the ICE stock and his assignment of a portion of the proceeds from any sale of Oxen Cove.

After Lyon was removed from L-C's board, the reconstituted board (Campbell, Storke, and Cook) continued to negotiate with CCA for the sale of Oxen Cove. Eventually, on August 30, 1996, L-C sold the property to CCA for $4 million. Lyon claims that despite his repeated requests, Campbell and the other two L-C directors failed and refused to provide him with any details about the sale of Oxen Hill or the disbursement of sale proceeds. Lyon does concede that $1 million went to the ECI trustee to satisfy Lyon's obligation that was secured by his pledge of ICE stock. (After the trustee was paid, he returned the ICE stock certificate to Lyon.) Campbell admits that he did not provide Lyon with any information about the sale and that he (Campbell) did not feel that he had any obligation to make an accounting to Lyon. In any event, it appears that over $2 million of the Oxen Hill sale proceeds went to Campbell. Campbell maintains that he was entitled to the balance of the sale proceeds as reimbursement for his payment of certain notes that had been guaranteed by Campbell and Lyon and that were held by Dominic F. Antonelli. Lyon and Antonelli have signed affidavits saying that Lyon and Campbell had each paid their one-half share of this obligation by 1990, well before the Oxen Hill sale.

Finally, after Campbell paid the ECI trustee the $1 million to satisfy Lyon's settlement debt to the estate, the trustee executed a release

4

that discharged Campbell and "all persons acting in concert" with him from any claims arising out of or related to the ECI bankruptcy.

Lyon sued Campbell, Storke, and Cook in federal district court in Maryland, alleging, among other things, (1) that Campbell, by failing to tender to Lyon his share of the Oxen Hill sale proceeds, breached an implied contract between Lyon and Campbell governing how the assets of ICE and L-C would be used and distributed, (2) that Campbell, Storke, and Cook, as directors of L-C, breached their fiduciary duty to him (Lyon) by failing to pay him his share of the proceeds from the Oxen Hill sale and by failing to respond to his repeated requests for information, and (3) that Campbell, Storke, and Cook violated the Maryland Corporations and Associations Code (a) by failing to perform their duties as directors in good faith, in the best interests of L-C, and in accordance with the applicable standard of care and (b) by engaging in conduct that was illegal, oppressive, or fraudulent.

The district court granted Campbell's motion to dismiss the contract claim on the ground that "the Court knows of no authority for the proposition that the formation of a corporation is accompanied by an implied contractual provision with regard to the distribution of corporate assets, short of liquidation." Lyon v. Campbell, Civ. No. S 98-1129, mem. and order at 3 (D. Md. Nov. 18, 1998). Later, the district court granted summary judgment for the defendants on the ground that Lyon's remaining claims were barred by the doctrine of unclean hands and by a release. In the alternative, the district court held (1) that Lyon's common law breach of fiduciary duty claim was barred by the business judgment rule and (2) that Lyon's two Maryland corporate law claims were not actionable, either because of the business judgment rule or because Lyon had failed to show any evidence of bad faith. Finally, the district court denied Lyon's motion to file a second amended complaint. Lyon now appeals.

II.

A.

First, Lyon argues that the district court erred when it held that Lyon's action is barred by his unclean hands. We agree with Lyon,

5

at least at this stage. The unclean hands doctrine allows a court to reject the claim of a party who is guilty of "willful wrongdoing in relation to the controversy before it." Bland v. Larsen, 627 A.2d 79, 85 (Md. Ct. Spec. App. 1993) (quoting Manown v. Adams, 598 A.2d 821, 824-25 (Md. Ct. Spec. App. 1991), vacated on other grounds, 615 A.2d 611 (Md. 1992)). The district court said that Lyon had unclean hands because he withheld information from his fellow directors about his settlement with the ECI bankruptcy trustee and because he urged the directors to sell Oxen Cove for $2 million. Lyon did wrongfully withhold information from the L-C board about his conflict (the stock pledge and settlement). Despite this initial failure to disclose, Lyon did not push for a quick or uninformed decision on the CCA offer when the other directors suggested that they hire a consultant to advise them on the market value of Oxen Cove. Moreover, as soon as Lyon disclosed his conflict, he was removed from the L-C board. Lyon's delay (of about ten days) in making the disclosure did not prevent the reconstituted L-C board from engaging in full and unhurried negotiations with CCA on the sale of Oxen Cove. The protracted negotiations, which Lyon was not a part of, appear to have dissipated any effect from Lyon's initial nondisclosure. The unclean hands doctrine applies to willful wrongdoing in relation to the claim being litigated. Lyon's claims in this lawsuit go to what the board (or Campbell) did with the proceeds of the sale and the board's failure to make any accounting to Lyon. It does not appear from the summary judgment record that Lyon is barred by unclean hands because his own nondisclosure in the beginning is not sufficiently related to his claim that the L-C board wronged him at a later time.

Second, Lyon argues that the district court erred when it held that Lyon's claims are barred by a release that the ECI bankruptcy trustee executed in favor of Campbell "and all persons acting in concert with him." The document releases Campbell and his associates from all claims arising out of or related to the ECI bankruptcy. The district court said that the release was a bar because (1) the trustee "had complete control over Lyon's interest in [ICE] under the pledge agreement" and (2) Lyon's personal liability to the estate was satisfied by Campbell with proceeds from the sale of Oxen Cove. We conclude that the release is not a bar to Lyon's claims. The settlement agreement between Lyon and the trustee provided that "Lyon is and shall remain the legal and equitable owner of 2,500 shares of stock in ICE,

6

which constitute 50% of all of the issued and outstanding shares of stock in ICE." The trustee had a pledgee's interest in Lyon's stock, and he returned the stock certificate to Lyon once Lyon's obligation was satisfied. The trustee did not have the power to-- and did not purport to -- release Lyon's residual rights as a shareholder of ICE.

Third, Lyon contends that the district court erred in its alternative holding that Lyon's common law breach of fiduciary duty claim is barred by the business judgment rule. Again, we agree that summary judgment should not have been granted on this ground. The business judgment rule supplies "a presumption that directors of a corporation act in good faith" and in the best interests of the corporation. Zimmerman v. Bell, 800 F.2d 386, 392 (4th Cir. 1986). See also Wittman v. Crooke, 707 A.2d 422, 425 (Md. Ct. Spec. App. 1998). Lyon has proffered sufficient evidence (for summary judgment purposes) to rebut this presumption. Lyon proffers at least the following: (1) the L-C directors would not provide Lyon with information about what happened to all of the proceeds from the Oxen Cove sale, (2) Campbell admitted that he would not communicate with Lyon (or his representative) about the sale, and (3) although Campbell claims he was entitled to the balance of the Oxen Hill proceeds as reimbursement for his payment of certain notes guaranteed by him and Lyon, the holder of the notes says that they were paid off -- on a 50-50 basis by Lyon and Campbell -- well before the Oxen Cove sale.

Fourth, Lyon argues that the district court erred in its alternative holding that his claims under the Maryland Corporations and Associations Code are not actionable. The district court awarded judgment to the defendants on Lyon's claim under Md. Code Ann. Corps. & Ass'ns § 2-405.1 (relating to the standard of care required of directors) on the ground that this claim is also barred by the business judgment rule. Because (as we just mentioned) Lyon has proffered evidence to rebut the presumption of the business judgment rule, his claim under § 2-405.1 may go forward. The district court also awarded judgment to the defendants on Lyon's claim under Md. Code Ann. Corps. & Ass'ns § 3-413 (relating to the involuntary dissolution of a corporation) on the ground that Lyon did not show any "illegal, oppressive, or fraudulent" conduct by the L-C directors. On the contrary, Lyon has proffered evidence that he was kept in the dark about the Oxen Hill sale and that the proceeds were disbursed in a way that

7

illegally diminished the value of his interest in L-C. As a result, Lyon's claim under § 3-413 may also go forward.

B.

Lyon argues that the district court erred in dismissing his implied contract claim and in denying his motion to file a second amended complaint. Finding no error in these rulings, we affirm them on the reasoning of the district court. See Lyon v. Campbell, Civ. No. S 98-1129 (D. Md. Nov. 18, 1998) (dismissing contract claim); Lyon v. Campbell, Civ. No. S 98-1129 (D. Md. Aug. 6, 1999) (denying motion to file second amended complaint).

III.

For the forgoing reasons, we vacate the district court's award of summary judgment for the defendants on Lyon's common law claim of breach of fiduciary duty and his statutory claims under Md. Code Ann. Corps. & Ass'ns §§ 2-405.1 and 3-413. The case is remanded for further proceedings on these claims. We, of course, express no opinion on what the ultimate outcome should be in this case -- a case described by the district court as the "latest battle in the marathon litigative war between the Lyon and Campbell interests." Lyon v. Campbell, Civ. No. S 98-1129 (D. Md. Nov. 18, 1998).

Finally, we affirm the district court's dismissal of Lyon's claim for breach of contract and the court's denial of his motion to file a second amended complaint.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

8