769 A.2d 274

**Patricia DANIELEWICZ, Individually, etc.,**

v.

**Diana ARNOLD, Individually, etc., et al.**

**No. 1198, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

April 2, 2001.

602

604

606

Matthew S. Sturtz (Jefferson V. Wright and Miles & Stockbridge, P.C., on the brief), Baltimore, for appellant.

Lawrence J. Quinn (Barry Weiskopf, Lee B. Rauch and Tydings & Rosenberg, LLP, on the brief), Baltimore, for appellees.

Argued before SALMON, DEBORAH S. EYLER and RAYMOND G. THIEME (Ret'd, specially assigned), JJ.

RAYMOND G. THIEME, Judge, Retired, Specially Assigned.

Patricia Danielewicz appeals from the Circuit Court for Anne Arundel County's decision granting appellee's Motion for Summary Judgment. Appellant presents the following questions for our review, which we have rephrased for clarity:

1. Whether the trial court erred by determining that appellant lacked standing to sue both in her own capacity and derivatively for the corporation for claims against

an officer and director of a corporation for breach of fiduciary duty, negligence, civil conspiracy, and aiding and abetting.

2. Whether the trial court erred by determining that corporate officers owe no fiduciary duties to an individual stockholder in the absence of actual fraud.

3. Whether the trial court erred by its interpretation of the rights and powers of a trustee under both the underlying trusts and Maryland law.

4. Whether the complaint had alleged specific facts sufficient to establish a dilution of the value of appellant's stock interest in AFS.

## I.

Arnold Factory Supply (AFS) was organized in 1965 by Mortimer and Helen Arnold. At that time, 7,000 shares of common stock were issued, with 3,500 shares issued to Mortimer Arnold and 3,500 shares issued to Helen Arnold. Mortimer Arnold transferred 1,155 of his shares to their son, George Arnold, and Helen Arnold transferred 1,155 of her shares to their other son, Anthony Arnold. In 1969, Mortimer and Helen Arnold transferred 525 shares of AFS stock to Anthony. They also transferred 525 shares to George, as a life tenant, with a remainder, upon George's death, to his daughter, appellant.

In accordance with Mortimer Arnold's will, upon his death, his remaining 1,820 shares were transferred to a trust for the benefit of Helen Arnold during her lifetime. The will further provided that upon Helen Arnold's death, 910 shares were to be transferred to Anthony outright and free of trust, and 910 shares were to be transferred to George to be held by him in trust for life, with the remainder to appellant. Helen Arnold's will provided for 910 of her shares to be transferred to Anthony outright and free of trust, and 910 shares to George to be held by him in trust for life, with the remainder to appellant. Thus, in July of 1983, after both Mortimer and Helen Arnold had died, appellant held an interest in 2,345 of

the outstanding shares of AFS (1,820 as a remainder in the trust for life held by George, pursuant to the wills of Mortimer and Helen Arnold, and a remainder in another 525 shares that were held by George as a life tenant).[1]

In May of 1986, George and Anthony negotiated an agreement whereby AFS would redeem from Anthony his 3,500 shares of AFS stock for $200,000. At the same time, they also negotiated for Anthony to sell to George 200 shares in another entity, Arnold Sales & Service, Inc. (AS & S) in exchange for $100,000. In August of 1987, the Board of Directors of AFS, which consisted of Andrew Danielewicz (appellant's husband), George Arnold, and Diana Arnold, authorized the issuance of 1,750 shares to George in exchange for his 200 shares in AS & S, which he had bought from Anthony.

George Arnold died in 1995, leaving 2,905 shares of AFS stock in a new trust of which appellee was the beneficiary. These shares represented a majority interest in AFS issued and outstanding stock at that time, as the corporation now owned 1,750 shares of the originally issued stock. Diana Arnold and Terry Holinsky, as trustees, became the legal holders of the stock under the new trust created by George. Appellant's interest in the shares that she owned became possessory at the time of George's death. In 1996, appellee, as personal representative of George's estate, filed a supplemental inventory, which disclosed George's ownership in AFS. At this time, appellant became aware of the 1986 and 1987 transactions that had taken place regarding AFS stock.

Appellant filed a complaint in her individual capacity and derivatively on behalf of AFS against appellee, as an individual and as co-trustee of the Residuary Trust u/w/o George M. Arnold. Appellant claimed that appellee breached her fiduciary duty to appellant and to the corporation in participating in and consenting to the 1987 transaction. Appellant's complaint

---

1. George was given complete managerial powers over the 1,820 shares that he held in trust for life. In order to protect appellant's remainder interest in the shares, George's ability to transfer the stock was limited.

further alleged negligence, civil conspiracy, and aiding and abetting.

Appellant's Complaint cited the lack of any appraisal or valuation by the corporation to ascertain both the fair market value of Anthony's 3,500 shares and his shares in AS & S. Appellant complained that, despite her interest in AFS, she was not provided with any notice or information concerning either of these transactions, nor was she provided with notice or information pertaining to the transaction in which George was given 1,750 shares of AFS stock in exchange for his 200 shares of AS & S stock. Appellant claimed that "Diana and George Arnold either knew or had reason to know of [a]ppellant's interest in a majority of the shares of AFS at that time as the stock ledger reflected her interest." Appellant asserted that Diana and George Arnold owed her and the corporation itself a fiduciary duty to disclose to her the 1987 transaction and to act honestly and in good faith. She also averred that the 1987 transaction was unfair to AFS because it overvalued the AS & S stock, resulting in overpayment for George's shares of AS & S, and that this transaction divested her of majority ownership of AFS stock, albeit that interest was held by her as a beneficial and remainder interest.

Appellee filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Appellee contended in her Motion that appellant lacked standing to sue either individually or derivatively because she was not a stockholder at the time of the alleged wrong, she had acquired her stock from one of the alleged wrongdoers, and because any action belonged only to AFS. Appellee further contended that appellant's Complaint had failed to state a claim upon which relief could be granted because no duty of care was owed to appellant at the time of the alleged wrong.

A hearing on appellee's Motion was conducted on June 12, 2000, by the Circuit Court for Anne Arundel County. The court granted appellee's Motion for Summary Judgment, holding that appellant lacked standing to bring her lawsuit both individually and derivatively, and that appellant had failed to

state a cause of action because she was owed no duty by appellee at the time of the alleged wrong. Subsequently, appellant filed this appeal.

## II.

■■ Appellant contends that the court erred in granting appellee's motion for summary judgment when material facts were in dispute. Pursuant to Md. Rule 2–501(e), "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). *See, e.g., Murphy v. Merzbacher*, 346 Md. 525, 531, 697 A.2d 861 (1997); *Bowen v. Smith*, 342 Md. 449, 454, 677 A.2d 81 (1996); *Rosenblatt v. Exxon Company, U.S.A.*, 335 Md. 58, 68, 642 A.2d 180 (1994); *McGraw v. Loyola Ford, Inc.*, 124 Md.App. 560, 572, 723 A.2d 502, *cert. denied*, 353 Md. 473, 727 A.2d 382 (1999). A material fact is one that will alter the outcome of the case, depending upon the factfinder's resolution of the dispute. *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985).

■■ The Court of Appeals has stated that "the proper standard for reviewing the granting of a summary judgment motion should be whether the trial court was legally correct." *Goodwich v. Sinai Hosp. of Baltimore, Inc.*, 343 Md. 185, 208, 680 A.2d 1067 (1996); *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 592, 578 A.2d 1202 (1990). The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact that is sufficiently material to be tried. *See Coffey v. Derby Steel Co.*, 291 Md. 241, 247, 434 A.2d 564 (1981); *Berkey v. Delia*, 287 Md. 302, 304, 413 A.2d 170 (1980).

■■ When a court determines whether any factual issues exist, it must resolve all inferences against the moving party. *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 386, 693 A.2d 370 (1997). The plaintiff, however, must submit some evidence in which the jury could reasonably

find for the plaintiff in order to defeat the motion. *Beatty v. Trailmaster Prod. Inc.,* 330 Md. 726, 625 A.2d 1005 (1993). In order for there to be disputed facts sufficient to render summary judgment inappropriate "there must be evidence on which the jury could reasonably find for the plaintiff." *Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 244, 603 A.2d 1357 (1992). This Court has held that "[c]onclusory denials or bald allegations will not defeat a motion for summary judgment." *Barber v. Eastern Karting Co.,* 108 Md. App. 659, 672, 673 A.2d 744 (1996) (*citing Seaboard,* 91 Md. App. at 243, 603 A.2d 1357). Moreover, "a mere scintilla of evidence in support of the non-moving party's claim is insufficient to avoid the grant of summary judgment." *Barber,* 108 Md.App. at 672, 673 A.2d 744 (*citing Beatty,* 330 Md. at 738, 625 A.2d 1005). Having set forth the appropriate standard of review, we now turn to the legal issues raised in this appeal.

## III.

Appellant's first contention concerns the trial judge's determination that she lacked standing to bring forth her claim, both as an individual and through a derivative action.[2] The trial court found that appellant lacked standing in an individual capacity because her vested remainder did not provide her with a present possessory interest in the shares until George's life estate expired upon his death. The trial court noted that appellant had "no standing individually as a stockholder to bring an action against Defendant for Defendant's acts prior to Plaintiff's possession." This principle, referred to as the contemporaneous ownership rule, provides that "a shareholder does not have standing to recover against directors for acts which took place prior to the shareholder becoming a shareholder." *Hecht v. Resolution Trust Corp.,* 333 Md. 324, 350, 635 A.2d 394 (1994); *Eisler v. Eastern States Corp.,* 182 Md. 329, 335, 35 A.2d 118 (1943); *Matthews v. Headley Chocolate Co.,* 130 Md. 523, 534, 100 A. 645 (1917).

---

2. We will first discuss whether appellant had standing to bring forth a claim in an individual capacity; thereafter, her standing to sue in a derivative capacity will be discussed.

" 'Stockholder' means a person who holds shares of stock in a corporation and includes a member of a corporation organized without capital stock." Md.Code (1975, 1999 Repl.Vol.), § 1–101 of the Corporations and Associations Article.

■■ Appellant argues that her vested remainder interest in the shares conveyed to George through the life estate, as well as a vested beneficial interest in the shares conveyed to George as trustee under the wills of her grandparents, sufficiently rendered her a "holder," and provided her with standing. She asserts that "[a] vested remainder is a present interest in property which may be sold or conveyed" and adds that "a vested remainder is an interest in fee simple." Although these assertions regarding the type of interests she possessed are correct, it does not necessarily follow that her vested remainder interests provided her with standing to sue the directors of AFS either individually or derivatively.

Appellant cites *Willoughby v. Trevisonno,* 202 Md. 442, 449–50, 97 A.2d 307 (1953); and *Dean v. Director of Finance of Montgomery County,* 96 Md.App. 80, 89, 623 A.2d 707 (1993) in support of her position regarding her standing to sue based on her vested remainder interests in AFS stock. We find that neither case stands for the proposition that one derives standing to sue, in a corporate setting such as the one presented here, based on a vested remainder interest.

In *Willoughby,* the Court of Appeals found that where fraud or undue influence is alleged, it is an exception to the rule that those only who have a clear, legal, and equitable title to land, connected with possession, have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on title. In the case at bar, however, no instance of fraud or undue influence is alleged. Further, *Willoughby* is inapposite to the case at hand, as that case involved a declaratory action pertaining to a future interest in land, pursuant to a deed, while the present case deals specifically with corporate shares and a vested remainderman's standing to sue corporate directors.

Appellant cites *Dean* in support of her assertion that her vested remainder interests represented fee simple interests in

the AFS shares. That type of analysis is irrelevant for our purposes here. We think it matters not whether her interest is in fee simple; the only issue relevant to our discussion on her standing is whether she had a present possessory interest so that she could be considered a "stockholder," *see supra.* In fact, we stated in *Dean* that "a remainder is a fee simple interest *lacking only present possession." Dean,* 96 Md.App. at 88, 623 A.2d 707. (Emphasis added.) None of the cases appellant cites supports her assertion that she was a "stockholder" at the relevant time, and without present possession of the stock in AFS, we cannot find that appellant was a "holder" of stock. Although the corporation's officers and directors may have known of appellant's remainder interests in shares of AFS, this cannot be said to have conferred upon her stock "holder" status. As the trial court correctly concluded, appellant's "vested remainder became a present possessory interest when George Arnold's life estate expired, upon his death. Until that point, Plaintiff did not have present possession of her remainder interest."

We find no law standing for appellant's proposition that her vested remainder cloaked her with standing to sue. On the contrary, we are inclined to think that her vested remainder did not provide her with standing, as her vested remainder was not a present possessory interest in the shares. Appellant has failed to present circumstances whereby she can be said to be a "holder" in order to have standing to sue as an individual. In *Ettridge v. TSI Group, Inc.,* 314 Md. 32, 548 A.2d 813 (1988), our Court of Appeals noted that

the principal considerations supporting the rule are these: 1) a stockholder bringing suit after acquiring his shares has sustained no injury because he received what he paid for; 2) to permit such an action would result in a windfall to the subsequent stockholder; and, 3) permitting such action would allow the stockholder to reap a profit from wrongs done to others, thus furthering such speculation.

*Id.* at 42, 548 A.2d 813 (citation omitted).

Although the first consideration quoted from *Ettridge* has limited applicability here because appellant did not buy her

shares, instead receiving her shares gratuitously, we think that the reasoning set forth in *Ettridge* nonetheless generally applies to the present circumstances.

Furthermore, even if it be said that appellant was a "stockholder" at the time of the alleged wrong, she nonetheless had no standing to sue in her individual capacity because the facts alleged by appellant raise a cause of action that may be pursued only by the corporation, or by a shareholder in the name of the corporation, and not by an individual shareholder in her individual capacity. Appellant suggests that she does have a cause of action as an individual, reasoning that "the dilution of her majority interest in AFS as a result of actions taken by Diana Arnold and George Arnold are damages sustained by her individually, and not to the corporation." The Court of Appeals, in *Waller v. Waller*, 187 Md. 185, 49 A.2d 449 (1946), enunciated the well-settled law on this issue:

It is a general rule that an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder though the injury may incidentally result in diminishing or destroying the value of the stock. The reason for this rule is that the cause of action for injury to the property of a corporation or for impairment or destruction of its business is in the corporation, and such an injury, although it may diminish the value of the capital stock, is not primarily or necessarily a damage to the stockholder, and hence the stockholder's derivative right can be asserted only through the corporation. The rule is advantageous not only because it avoids a multiplicity of suits by the various stockholders, but also because any damages so recovered will be available for the payment of debts of the corporation, and, if any surplus remains, for distribution to the stockholders in proportion to the number of shares held by each. *Miller v. Preston*, 174 Md. 302, 199 A. 471 (1938); *Wells v. Dane*, 101 Me. 67, 63 A. 324 (1905); *Caldwell v. Eubanks*, 326 Mo. 185, 30 S.W.2d 976, 72 A.L.R. 621, 625 (1930); *Stinnett v. Paramount–Famous Lasky Corporation*, Tex.Com.App., 37 S.W.2d 145

(1931); *Cullum v. General Motors Acceptance Corporation,* Tex.Civ.App., 115 S.W.2d 1196 (1938); *Commonwealth of Massachusetts v. Davis,* 140 Tex. 398, 168 S.W.2d 216 (1943); *Green v. Victor Talking Machine Co.,* 2 Cir., 24 F.2d 378, 59 A.L.R. 1091 (1928), *certiorari denied* 278 U.S. 602, 49 S.Ct. 9, 73 L.Ed. 530.

Generally, therefore, a stockholder cannot maintain an action at law against an officer or director of the corporation to recover damages for fraud, embezzlement, or other breach of trust which depreciated the capital stock or rendered it valueless. Where directors commit a breach of trust, they are liable to the corporation, not to its creditors or stockholders, and any damages recovered are assets of the corporation, and the equities of the creditors and stockholders are sought and obtained through the medium of the corporate entity. *Pritchard v. Myers,* 174 Md. 66, 77, 197 A. 620, 116 A.L.R. 775; *Smith v. Hurd,* 12 Metc. (Mass.) 371, 46 Am. Dec. 690.

\* \* \*

The rule is applicable even when the wrongful acts were done maliciously with intent to injure a particular stockholder. It is immaterial whether the directors were animated merely by greed or by hostility toward a particular stockholder, for the wrongdoing affects all the stockholders alike. *Seitz v. Michel,* 148 Minn. 80, 181 N.W. 102, 12 A.L.R. 1060, 1068. It is accordingly held that a stockholder cannot sue individually to recover damages for injuries to the corporation, notwithstanding that the directors may have entered into an unlawful conspiracy for the specific purpose of ruining the corporation. *Niles v. New York Central & Hudson River R. Co.,* 176 N.Y. 119, 68 N.E. 142; *Parascandola v. National Surety Co.,* 249 N.Y. 335, 164 N.E. 242, 62 A.L.R. 551, 558. We specifically hold that where conspirators ruin a person financially by forcing into receivership a corporation in which he was a large stockholder, in order to eliminate him as an officer and to acquire control of the corporation, the wrongs are suffered by the injured person in his capacity as a stockholder, and the

action to recover for resulting injuries should be brought by the receiver. *Miller v. Preston,* 174 Md. 302, 313, 199 A. 471.

*Waller,* 187 Md. at 189–91, 49 A.2d 449.

Appellant concedes that the general rule is as articulated in *Waller,* but points out additional language from *Waller,* which she suggests is applicable to the facts of the present case:

> Unquestionably a stockholder may bring suit in his own name to recover damages from an officer of a corporation for acts which are violations of a duty arising from contract or otherwise and owing directly from the officer to the injured stockholder, though such acts are also violations of duty owing to the corporation. *General Rubber Co. v. Benedict,* 215 N.Y. 18, 109 N.E. 96, L.R.A.1915F, 617; *Mairs v. Madden,* 307 Mass. 378, 30 N.E. 242[30 N.E.2d 242], 245, 132 A.L.R. 256, 259; *Ritchie v. McMullen,* 6 Cir., 79 F. 522, 533, *certiorari denied,* 168 U.S. 710, 18 S.Ct. 945, 42 L.Ed. 1212; *Chase National Bank v. Sayles,* 1 Cir., 30 F.2d 178.

*Id.* at 192, 49 A.2d 449.

Appellant's reliance on this principle, however, is entirely misplaced as it applies to the facts of the instant case. Appellant does not claim that there occurred "a violation of a duty arising from contract." Rather, appellant claims, as "the injured stockholder," that she was owed a duty "directly from the officer," and names Diana Arnold and George Arnold as those officers owing her a direct duty. We find no merit to this contention. The *Waller* Court, after setting forth this language indicating that there may be instances where "a stockholder may bring suit in his own name," immediately went on to provide examples of situations in which courts have allowed for a stockholder to bring suit in his own name against officers of a corporation.

> For example, in *Vierling v. Baxter,* 293 Pa. 52, 141 A. 728, it was held that a stockholder could bring suit against the officers of the corporation for defrauding him of his patents, royalties, and other property, because the gravamen of his

complaint was not the damage to the corporation or its stockholders in general but to himself personally. Likewise, in *Cutting v. Bryan*, 9 Cir., 30 F.2d 754, where a corporate officer entered into a contract to convey to the corporation the title to certain property which had been taken in his own name, it was decided that individual stockholders could bring suit against him, because he held the property in trust for the benefit of the stockholders. Again, in *Blakeslee v. Sottile*, 118 Misc. 513, 194 N.Y.S. 752, where the manager of an incorporated automobile sales agency, who held a considerable amount of the capital stock as a trustee, impaired the business by persuading the automobile manufacturer to transfer the agency's contract to another company, it was held that the owner of the stock could bring suit against the manager for violating his fiduciary duty.

*Waller*, 187 Md. at 193, 49 A.2d 449.

In the present case, none of these circumstances set forth by the *Waller* Court applies in order to support appellant's contention that she had standing to sue in her individual capacity as a "shareholder." Appellant has not alleged the presence of fraud. Moreover, George was the trustee of appellant's beneficial shares, but he was not named in appellant's action. Thus, assuming only for purposes of this particular contention that appellant was indeed a "stockholder," we nonetheless disagree with appellant regarding whether circumstances existed that would have allowed her to sue in an individual capacity. *See also Miller v. Preston*, 174 Md. 302, 199 A. 471 (1938). Appellant also avers that

Diana Arnold and George Arnold breached their fiduciary duties of loyalty, disclosure, and good faith to Appellant when they participated in and consented to the August 1987 [t]ransaction that diluted Appellant's interest in AFS and achieved a shift in the controlling interest in AFS from Appellant to George Arnold (and ultimately to Diana Arnold following George's death).

We note, however, that this alleged breach of fiduciary duty does not set forth a basis for an exception to the

general rule articulated in *Waller*, which we have discussed, *supra*. The appellant in *Waller* had been the majority shareholder in M. Waller Corp., and had brought suit against several officers and directors of the corporation to recover damages for destruction of the value of his stock. Appellant alleged that, pursuant to an arbitration award, he was entitled to a majority share of the corporation's stock, but that "his brother conspired with the other defendants to obtain control of the corporation and did everything he could to ruin plaintiff financially and destroy the value of his stock." *Id.* at 188, 49 A.2d 449. The corporation was eventually placed in the hands of receivers. The trial court had entered judgment in favor of the defendants in that case, and the Court of Appeals affirmed. The Court remarked that appellant's

> declaration does not allege the violation of any right personal to plaintiff, but only violation of rights common to all the stockholders. Hence, any wrongs committed by defendants were done to the corporation, affected all the stockholders of the corporation, and could be redressed only by an action brought by the corporation or its receivers.... Nor did there exist in this case any fiduciary duty other than that which the law imposes upon all officers and directors. It is generally stated that directors occupy a fiduciary relation to the corporation and all its stockholders, but they are not trustees for the individual stockholders, *Booth v. Robinson*, 55 Md. 419, 436; *Acker, Merrall & Condit Co. v. McGaw*, 106 Md. 536, 557, 68 A. 17; *Llewellyn v. Queen City Dairy*, 187 Md. 49, 48 A.2d 322, 327. The reason for this distinction is that in law the corporation has a separate existence as a distinct person, in which all the corporate property is vested and to which the directors are responsible for a strict and faithful discharge of their duty, but there is no legal privity or immediate connection between the directors and the individual stockholders.

*Waller*, 187 Md. at 194, 49 A.2d 449.

The Court's decision in *Waller* is dispositive of the present case on the issue of appellant's standing to sue in a capacity as an individual stockholder. In her Reply Brief submitted to

this Court, appellant attempts to distinguish *Waller* from this case. She states:

> In the instant case, unlike the situation in *Waller,* Diana and George Arnold owed a duty to Appellant, who sustained individual harm—the dilution of her interest in AFS resulting in a shift in the controlling interest in AFS from Appellant to Diana Arnold's husband, George Arnold. Certainly the loss of a controlling interest in AFS can only be an injury to the Appellant.

Appellant fails to recognize, however, that the facts of the present case are actually *not* distinguishable from those of *Waller.* Appellant in that case similarly complained of his loss of his controlling share of the corporation's stock. We obviously recognize *Waller* as being well-settled law, evidenced by adherence to it by numerous courts since its decree. Further, after a review of the facts of both *Waller* and the instant case, if we were asked to choose which appellant had alleged or suffered more direct, and even intentional, personal injury as a result of actions by officers of a corporation, we would likely find that appellant in the instant case suffered less personal and direct injury than did appellant in *Waller*—and in order to make this statement, we assume for a moment that appellant in this case did actually suffer compensable injury as a result of the actions for which she complains. We have been provided with no basis, nor can we find one, that would justify dealing with appellant's claims in the present case any differently than the manner in which the *Waller* Court handled that appellant's claims. We certainly have not been provided with grounds to cloak appellant in this case with *more* means of redress for individual harm suffered than was provided by the Court of Appeals in *Waller.*

■ Appellant's argument pertaining to her individual standing to sue does not end here. Alternatively, appellant suggests that we apply the equitable rule that a party has standing to sue in such circumstances when the party's shares devolved upon the party by operation of law after the alleged wrongdoing. In the present case, appellant's stock interest in

AFS devolved upon her through operation of law, as her interest arose under the wills of her grandparents, and became possessory upon the death of the life tenant, her father. This doctrine has its origin in the Supreme Court case of *Hawes v. Oakland,* 104 U.S. 450, 26 L.Ed. 827 (1881). We point out to appellant, however, that courts, beginning with the Supreme Court in *Hawes,* have applied this rule to confer standing in this manner only in shareholder derivative actions, and not in actions where a shareholder is suing in an individual capacity. As such, the rule is inapplicable regarding appellant's standing to sue individually, and we shall therefore consider this rule only as it pertains to appellant's standing to sue derivatively. We therefore find that appellant lacked standing to sue in an individual capacity.

It is elementary that no action to recover damages for any wrong can be maintained unless brought in the name of the proper party plaintiff. The question whether a particular action at law should be brought by a corporation or by a stockholder therein is decided by determining which has the right of action.

*Waller,* 187 Md. at 194, 49 A.2d 449.

We turn now to consider whether appellant possessed standing in order to sue in a derivative capacity.

## IV.

As is the case with standing to sue individually, one must have been a shareholder at the time of the alleged wrong in order to have standing to sue derivatively. Appellant's assertion regarding the applicability of the rule set forth in *Hawes,* however, arguably applies in her derivative action. In *Hawes,* the Supreme Court held that, when a shareholder sues the corporation, he must state

an allegation that complainant was a shareholder at the time of the transactions of which he complains, *or that his shares have devolved on him since by operation of law,* and that the suit is not a collusive one to confer on a court of the United States jurisdiction in a case of which it could other-

wise have no cognizance, should be in the bill, which should be verified by affidavit.

*Id.* at 461 (emphasis added).

Appellant's shares in AFS devolved on her by operation of law, and thus it can be said, as it pertains only to her standing to sue derivatively, that it may be irrelevant in this regard whether she owned a present possessory interest in the shares at the time of the alleged wrong.[3]

In her Reply Brief, appellant asserts that *McQuillen v. Nat'l Cash Register Co.,* 22 F.Supp. 867 (D.Md.1938), is applicable in this case, and argues that *McQuillen* thus confers onto her standing to sue because the shares in question devolved on her by operation of law. We agree with the premise of this contention, but only to a point.[4] In *McQuillen,* the Federal District Court discussed whether the plaintiffs were "shareholders at the time of the grievances of which they complained." *Id.* at 872. The court, in determining whether the plaintiffs in that case had standing to sue, looked to Equity Rule 27, which has since been codified as Federal Rule 23.1, which states in pertinent part, that a plaintiff must allege that he was a "shareholder at the time of the transaction of which he complains, or that his share had devolved on him since by operation of law." *Id.* at 871.

Pursuant to the Federal Rule, the court found that the plaintiffs in that case were not "stockholders" at the time of the particular transaction of which they complained. Thus, the court stated that "it next becomes necessary to determine whether these shares ... may have devolved on them 'by operation of law.' " *Id.* The court explained that "[t]he phrase 'operation of law' is used in [Equity Rule 27, now Federal Rule

---

**3.** To reiterate, however, this rule applies only to her derivative action, and not to her claims as an individual.

**4.** As we will explain, *infra,* the applicability of this rule does not act to excuse appellant from the requirement that she make a demand onto the directors before filing her lawsuit. We shall address this issue after our discussion on whether appellant's shares devolved on her by operation of law.

23.1] to indicate the manner in which a party acquires rights and sometimes liabilities without any act or cooperation of the party himself." *Id.* The *McQuillen* court ultimately held, however, that "the shares did not so devolve upon the plaintiffs" in such a manner. *Id.*

That case was subsequently appealed to the United States Court of Appeals for the Fourth Circuit.[5] *McQuillen v. Nat'l Cash Register Co.,* 112 F.2d 877 (4th Cir.1940). The U.S. Court of Appeals affirmed the judgments of the District Court, and applied Federal Rule 23.1 in its analysis. The Court stated:

> In stockholders' bills, Equity Rule 27 (now Federal Rules of Civil Procedure, Rule 23) requires the plaintiff to allege, among other things, that he was a "shareholder at the time of the transaction of which he complains, or that his share had devolved on him since by operation of law".
>
> Judge Coleman found, quite properly we think, that the shares in question were not a part of the trust estate when appellants became trustees, but that they were subsequently purchased by the appellants as trustees. Accordingly he held, again we think properly, that these shares did not devolve upon appellants by operation of law and that they thus could not complain of any transactions alleged to be illegal and fraudulent which had occurred before the appellants acquired this stock. Since Equity Rule 27 was adopted as a result of the decision in *Hawes v. Oakland, supra,* the United States Supreme Court has insisted upon a rather rigid compliance with this rule.

*McQuillen,* 112 F.2d at 882 (citations omitted).

The Court then went on to briefly discuss whether the Rule applied in Maryland state law:

---

5. There were actually three written opinions set forth by the District Court Judge in *McQuillen.* The opinion cited herein, 22 F.Supp. 867, was the second opinion in that trilogy. The U.S. Court of Appeals for the Fourth Circuit reviewed all of these opinions in *McQuillen v. Nat'l Cash Register Co.,* 112 F.2d 877 (4th Cir.1940).

We need not decide whether, since the decision in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 69, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, we are bound here to follow the applicable state law, which would quite clearly be the law of Maryland; for the Maryland doctrine is in line with the rule. *Matthews v. Headley Chocolate Co.,* 1917, 130 Md. 523, 532–534, 100 A. 645. *See, also, Tompkins v. Sperry, Jones & Co.,* 1903, 96 Md. 560, 54 A. 254.

*McQuillen,* 112 F.2d at 882.

In *Tompkins,* cited by *McQuillen,* our Court of Appeals referred to the requirement that a plaintiff have owned shares at the time of an alleged wrong in order to have standing, and made brief mention of whether Maryland confers standing to sue derivatively in a case where shares have devolved on a party by operation of law.

In fact the bill does not allege that any of the present bond or stockholders were the original holders of those securities *or that they received them from the defendants or from either of them.* Such an allegation has in several cases been held to be necessary to enable a receiver to maintain a suit of this character even when it is free from the other objections existing in the present case.

*Tompkins,* 96 Md. at 583, 54 A. 254 (emphasis added).

Although Maryland state law clearly requires a plaintiff in this type of action to allege that he was in fact a stockholder at the time of the alleged wrong, we need not decide whether Maryland state courts have also unequivocally adopted the rule whereby a party may possess standing to sue derivatively through operation of law, because we think that, irrespective of that issue, appellant failed to properly satisfy a certain condition precedent prior to bringing her derivative law suit.

In *Hawes,* the Supreme Court articulated a demand requirement, along with a futility exception, to protect the managerial prerogatives of the corporate directors and to prevent the collusive manufacture of diversity jurisdiction. *The Hawes* Court stated in regard to this requirement that "[t]he efforts to induce such action as complainant desires on

the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity...." *Hawes,* 104 U.S. at 460–61. In the present case, appellee claims in her brief that

> Appellant has no standing to sue derivatively for the additional reason that she inexcusably failed to make a demand upon AFS's board of directors for the board to initiate an action on behalf of the company. Appellant's bald allegation that it would be futile for her to have done so is insufficient to excuse her failure to demand such action of the board.... Her failure to make such demand justified the dismissal of her derivative claims.

We note that paragraph nine of appellant's complaint involves this demand requirement and the alleged futility of such demand:

> Demand upon AFS to institute suit directly against Defendant Diana Arnold or the co-trustees is futile. Plaintiff and the trust are the only shareholders of AFS. The Trust is for the benefit of Defendant Diana Arnold and her son, Michael Arnold. The AFS Board of Directors is comprised of Diana Arnold and Michael Arnold. Mrs. Arnold flatly denies any wrongdoing on her part.

The derivative form of action permits an individual shareholder to bring "suit to enforce a corporate cause of action against officers, directors, and third parties." *Ross v. Bernhard,* 396 U.S. 531, 534, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). To prevent abuse of this remedy, however, equity courts established as a "precondition for the suit" that the shareholder demonstrate that "the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Ross,* 396 U.S. at 534, 90 S.Ct. 733. After this requirement

was set forth in *Hawes,* it was subsequently codified by Federal Rule of Civil Procedure 23.1, which states in relevant part:

The complaint [in a shareholder derivative action] shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

Federal Rule 23.1 primarily deals with the procedural issues of what a plaintiff must plead in the complaint. Nevertheless, the substantive condition precedent, namely the demand requirement, established by this rule and by the case law from which it derived, applies to actions in Maryland state courts as well. *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 95–97, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

In *Werbowsky v. Collomb,* 362 Md. 581, 766 A.2d 123 (2001), the Court stated:

Both because a shareholder's derivative action necessarily intrudes upon the managerial prerogatives ordinarily vested in the directors and to curtail collusive activities by the corporation and mischief and abuse on the part of disgruntled shareholders, the law soon attached to this new mechanism the condition that, before being allowed to proceed with a derivative action, a shareholder first make a good faith effort to have the corporation act directly and explain to the court why such an effort either was not made or did not succeed. In its initial formulation, this requirement was quite strict. *See Hawes v. Oakland,* 104 U.S. 450, 460–61, 26 L.Ed. 827, 832 (1881), in which the Court stated: "Before the shareholder is permitted in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an

earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it."

In Federal actions, the requirement of a demand, unless lawfully excused, remains fixed as both a substantive and pleading prerequisite. Procedurally, Fed.R.Civ.P. 23.1 requires that a complaint in a derivative action "shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." In *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95–97, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152, 163–64 (1991), involving a Maryland corporation, the Court made clear that pre-suit demand was not merely a pleading requirement, but, through incorporation of State law, a substantive one:

"To prevent abuse of this remedy, however, equity courts established as a 'precondition for the suit' that the shareholder demonstrate that 'the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.' " *Ross v. Bernhard*, [396 U.S. 531, 534, 90 S.Ct. 733, 736, 24 L.Ed.2d 729, 734 (1970) ].

\* \* \*

The purpose of the demand requirement is to 'afford the directors an opportunity to exercise their reasonable business judgment and "waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." ' [citation omitted] Ordinarily, it is only when demand is excused that the shareholder enjoys the right to initiate 'suit on behalf of his corporation in disregard of the directors' wishes.' [citation

omitted] In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.' "

*Werbowsky*, 362 Md. at 601, 766 A.2d 123 (footnote omitted).

In her Reply Brief, appellant cites *Parish v. Maryland & Virginia Milk Producers Ass'n*, 250 Md. 24, 242 A.2d 512 (1968), in support of her suggestions that in determining whether demand would be futile, a common sense and practical inquiry into the issue is required, and that Maryland law is liberal in excusing demand upon directors under certain circumstances. *Id.* at 82–85, 242 A.2d 512.

Appellant reasons that a demand on the board of directors would have been futile because appellee "certainly would not have approved the filing of an action against herself." Moreover, although appellant concedes that one of the directors was actually her husband, Andrew Danielewicz, appellant claims that, aside from appellee, the remaining director, "Michael Arnold (son of Diana) is a beneficiary of a trust established under George's will that is the recipient of shares of AFS," and thus is an interested director. Appellant suggests to this Court that Andrew Danielewicz would have had to abstain from any vote on the issue because of his relationship with appellant, and that Michael Arnold would have also been required to abstain because of his interest in AFS. Appellant goes on to contend that

[e]ven assuming that Michael Arnold and Andrew Danielewicz would not have been required to abstain, a reasonable person conducting a common sense and practical inquiry would reasonably conclude that Diana Arnold's son would not approve the filing of a derivative action against his mother, especially where, as here, Diana Arnold flatly denies the allegations and Michael Arnold would benefit from a decision not to proceed with a lawsuit on behalf of AFS.

We reject appellant's suggestion regarding whether the directors would have been required to abstain from any vote on this issue. We respond to appellant's contentions

regarding the proposed futility of a demand by pointing out that any liberal approach to this rule suggested in *Parish* has certainly become more stringent as a result of the Court of Appeal's decision in *Werbowsky*. "Whatever may have been the perceived trend in 1968, when Parish was decided, the trend since then has been to enforce more strictly the requirement of pre-suit demand and at least to circumscribe, if not effectively eliminate, the futility exception." *Werbowsky*, 362 Md. at 607, 766 A.2d 123. The *Werbowsky* Court discussed the evolution of the law on this subject at great length, and stated:

> We adhere, for the time being, to the futility exception, but, consistent with what appears to be the prevailing philosophy throughout the country, regard it as a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule. That focuses the court's attention on the real, limited, issue—the futility of a pre-suit demand—and avoids injecting into a preliminary proceeding issues that go more to the merits of the complaint—whether there was, in fact, self-dealing, corporate waste, or a lack of business judgment with respect to the decision or transaction under attack. It does not preclude, however, appropriate judicial review, under the business judgment rule, of the response (or non-response) to a demand. *See Harhen v. Brown,* 431 Mass. 838, 730 N.E.2d 859 (Mass.2000).

*Werbowsky,* 362 Md. at 620, 766 A.2d 123.

In the case *sub judice*, appellant claims that the second type of scenario existed, i.e. that the majority of the directors could not reasonably have been "expected to respond to a demand in good faith and within the ambit of the business judgment rule" due to their personal and direct involvement with the decision

to pursue the 1987 transaction. We point out that, although appellant was not required to actually prove the merits of this contention in her complaint, appellant was required, in accordance with *Werbowsky*, to demonstrate, through her allegations or evidence, *"in a very particular manner,"* that a majority of the directors were "so personally and directly conflicted or committed to the decision in dispute that they [could not] reasonably [have been] expected to respond to a demand in good faith and within the ambit of the business judgment rule."

We think that appellant has not met this burden, as she has presented no evidence that the directors' proposed interests in the transaction would have caused them to reject a demand by appellant had such demand been made at the appropriate time. Rather than present evidence, appellant presents conjecture and speculation. Appellant apparently only discovered in 1996 the occurrence of the transaction in question. Appellant states that the directors at that time were her husband, Diana Arnold, and Michael Arnold. Even assuming that Diana Arnold was so interested in the transaction that she could not have reasonably been expected to respond to appellant's demand in good faith, we cannot find that the remaining two directors were "so personally and directly conflicted or committed to the decision in dispute that they [could not] reasonably [have been] expected to respond to a demand in good faith and within the ambit of the business judgment rule."

It may be assumed that appellant's husband may have responded to appellant's demand; in fact, he is not even a named defendant in this action. Nor was Michael Arnold a named defendant in appellant's Complaint. Moreover, in reference to Michael Arnold, who is appellee's son, appellant has not presented sufficient evidence indicating that he would not have responded to appellant's demand. Appellant's claims stem primarily from the 1987 transaction, whereby George received additional shares of AFS from the corporation in return for his 200 shares of AS & S stock. Appellant asserts that George's will created a trust that disposed of his shares to

Diana Arnold and that Michael Arnold was also a beneficiary to the trust. In her Complaint, appellant states that the "trust [created by George's will] is for the benefit of Defendant Diana Arnold and her son, Michael Arnold." In her Reply Brief, appellant states that Michael Arnold "is a beneficiary of a trust established under George's will that is the recipient of shares of AFS." She does not state, however, how many shares Michael was given in accordance with this trust, nor does she state exactly how Michael was benefitted by George's trust. Further, we do not know if all of the shares George owned at the time of his death were passed to this trust, or whether only some of his shares were included in this trust. That distinction is significant because, without knowing more about the number of shares to which Michael has an interest, and by what instrument such interest was passed on to him, we may assume that Michael's interest as a beneficiary to shares of stock that had been owned by George only stems from shares of AFS that George owned prior to the 1987 transaction of which appellant complains. In that case, it could be said that Michael would have had no personal or direct interest in the 1987 transaction.

Appellant makes no mention of what type of interest Michael had in the trust created by George, and whether he actually obtained present possession of the shares from this trust. If Michael Arnold would not actually receive a present possessory interest of these shares until the death of his mother, then it is arguable whether it may have simply been in his better interests for this trust to not have ever been created. We should not be asked to assume the exact type of interest Michael Arnold has in this trust, nor the exact amount of shares to which he is entitled as a result of this trust. Likewise, we should not be asked to assume that Michael would have preferred that his mother have an interest in shares of AFS rather than have those shares owned by the corporation itself.

The Court of Appeals has recently announced, in *Werbowsky, supra,* that the futility exception pertaining to a demand upon a corporation's directors to sue should not be lightly

accepted without the presentation of sufficient evidence, in a very particular manner, that demonstrates the alleged futility of such a demand. Regrettably, this Court has certainly seen its share of cases whereby families have literally been torn apart over financial disagreements. In light of the specific factual evidence one must produce in order to demonstrate futility of a demand, we should not simply accept assumptions that a demand would be futile merely based on such relationships.

In order to demonstrate the futility of a demand, appellant should have provided more information regarding the trust in question, such as information concerning the amount of shares to which Michael Arnold may have had an interest under the trust, and what type of interest he actually possessed. This information may have indicated that Michael actually may have responded to a demand. Moreover, his mother's interest in the trust is not enough grounds to assume that he would not have responded to a demand. The record simply lacks sufficient information regarding this trust. In one paragraph in her Complaint, appellant states that the trust was set up "for the benefit of Defendant Diana Arnold and her son, Michael Arnold." In another paragraph of her Complaint, however, she makes no mention of any interest owned in the trust by Michael, stating that "[p]ursuant to George's will ... Defendant Diana Arnold became both the legal owner (in her capacity as trustee) and the beneficial owner (as beneficiary of the trust) of George's stock."

We find that appellant did not adequately satisfy the condition precedent pertaining to making demand on the directors prior to bringing suit, nor did she sufficiently set forth the bases for the futility thereof. Because appellant has not satisfied the demand requirement, we find it unnecessary to consider whether her shares devolved upon her by operation of law. We find that the trial court correctly granted summary judgment based on its finding that appellant lacked standing to pursue her claims, both in her individual capacity and derivatively.

## V.

Aside from finding that appellant lacked standing to sue either individually or derivatively, the trial court also noted in its opinion that appellant's claim failed to state a cause of action. We agree.

Appellant argues that she suffered actual individual harm due to "the dilution of her interest in AFS resulting in a shift in the controlling interest in AFS from Appellant to Diana Arnold's husband, George Arnold." Appellant then goes on to claim that "[c]ertainly the loss of a controlling interest in AFS can only be an injury to the Appellant."

We find no merit to appellant's suggestion regarding a compensable harm. The trusts created in the wills of both Mortimer and Helen Arnold clearly provided the trustee of appellant's beneficial shares, George Arnold, with very broad managerial powers over the trust property. Appellant's cause of action stems from the 1987 transaction whereby George acquired additional shares of AFS stock, thus reducing appellant's beneficial interests in her trust shares as a result. It seems rather clear, however, that George, as trustee under the aforementioned wills, was expressly given authority for such action. Item IX of Mortimer Arnold's will states that the trustee

> shall have full power to take all such steps and perform all such acts as may be necessary or proper in the management of the property and of said trusts, including the power to participate in any corporate reorganization, liquidation or dissolution of any corporation in whose securities any portion of the trust estate may be invested . . . and likewise power to value assets and power to make any sale or other disposition of any part of said property. . . . And, whenever my Trustees are authorized or directed to act upon their own judgment or discretion, their decision shall be binding upon all persons. All valuations which are placed by the Trustees upon any portion of the trust estate to carry out the above provisions in making any partition or division, or in setting aside any share, or carrying out any of the

provisions of the trusts herein, shall be final and binding upon all persons, including any and all of the beneficiaries of the estate.

Helen Arnold's will contained similar language pertaining to the trust in question. Item VIII of her will provided that the trustee was granted the

power to value assets and power to make any sale or other disposition of any part of said property.... Whenever the Trustee is authorized or directed to act upon its own judgment or discretion, its decision shall be binding upon all persons. Any valuation which is placed by the Trustee upon any portion of the trust estate to carry out the above provisions in making any partition or division, or in setting aside any share, or carrying out any of the provisions of this trust, shall be final and binding upon all persons, including any and all of the beneficiaries of the Estate.

We find it very clear from the language used in these trusts that George Arnold, as trustee of appellant's beneficial trust, possessed the authority to act in the way he did while conducting the transactions involving the AFS stock. We further point out that appellant has no cause of action based on any alleged improper conduct by George, as he died in 1995, and is not a named defendant in appellant's law suit. Thus, we do not consider any further claims by appellant regarding actions taken by George Arnold.

Appellant contends that appellee owed a fiduciary duty to appellant, as appellant was an individual stockholder in AFS, and that such fiduciary duty existed even in the absence of actual fraud. Appellant asserts that this fiduciary duty was breached because appellee participated in and consented to the 1987 transaction, but failed to disclose that transaction to appellant. Appellant claims that her shares in AFS were diluted as a result of that transaction, and that her controlling interests in AFS stock shifted from herself to George Arnold. Appellant argues that "the mere dilution of stock is not the harm alleged by Appellant. The dilution of the stock is what led to the individual harm, i.e., the loss of a controlling interest

in AFS." Thus, appellant does not claim any injury resulting from a diminished value of her ownership in AFS stock, but rather only complains "that her *controlling interest* in AFS was diminished, which deprived her of a majority and controlling interest in AFS."

Appellant, in fact, fails to take notice of the fact that the corporation had originally issued 7,000 shares. At the time of the 1987 transaction, however, only 5,250 shares were outstanding, as 1,750 shares were held by the corporation.[6] Therefore, any majority interest appellant may have owned was subject to a decision by the corporation to transfer at some point the remaining 1,750 shares it owned. Indeed, nowhere within the record of this appeal does appellant provide this Court with information contradicting this fact. It follows that appellant's claim of ownership to a majority interest was within the discretion of the corporation, and potentially temporary in nature; the corporation, through action by its directors, would have been completely justified in transferring those shares at any time. Consequently, appellant's claim that her injury resulted from the shift of control of shares has no merit.

As the trial judge correctly pointed out, appellant presents no specific information regarding how the loss of a "controlling share" of AFS stock caused her any injury. As appellant has stated herself, it was the directors who made the decisions of which she complains. It is not contended that appellant would have any additional specific powers within the corporation as a result of owning a majority interest in the shares. Appellant has not demonstrated how a loss of a "controlling share" of stock, assuming for a moment that she even had such, caused her an injury *per se.* Nowhere does she allege that her dilution of shares, or her alleged loss of

---

6. There were originally 7,000 shares outstanding until Anthony sold back his 3,500 shares to the corporation. Subsequently, the corporation issued 1,750 of those shares to George (the 1987 transaction). The effect was that 5,250 shares were now outstanding, with another 1,750 shares still retained by the corporation.

control, actually caused loss of value to her holdings, nor does she specifically allege what specific actions she is now unable to perform solely due to the shift of control.[7]

 Appellant's claim alleges that appellee should have provided appellant with notice of the 1987 transaction, and that appellant should have been consulted for an opinion of the transaction. Appellant also claims that the "sale and purchase transaction was unfair to AFS in that it overvalued AS & S, resulting in the overpayment by AFS for George's stock in AS & S." We disagree.

As we have stated, the trusts that created appellant's beneficiary interests of the majority of the shares in which she had an interest in at the time of the 1987 transaction clearly provided the trustee with exclusive voting power of those shares. Item IX of Mortimer Arnold's will expressly cloaked the trustee with "full power ... to vote in person or by proxy the stock constituting a part of the trust estate." Likewise, Item VIII of Helen Arnold's will contained identical language pertaining to the trustee's voting power of these shares. Moreover, appellant has provided neither the trial court nor this Court with legal authority indicating that appellant had the legal right to vote pertaining to the shares in which she owned a remainder interest, i.e. the 525 shares in which she had an interest free of trust. George, as the life tenant, had the right to vote those shares. Therefore, appellant owned no shares in which she had a right to vote when the 1987 transaction took place; as such, there was no reason whereby it was required of the corporation, or its officers or directors, to provide appellant with notice of the transaction or to consult her for her opinion on the matter.

---

7. It could possibly be assumed that she may have had, as a majority stockholder, the ability to elect and thus control the directors. Appellant, however, does not specifically raise this contention, nor is there any evidence presented on it. Such a contention would nevertheless be irrelevant pursuant to our finding that appellant has not demonstrated majority shareholder status in a definitive manner.

█ As we have set forth, appellant claims that the "sale and purchase transaction was unfair to AFS in that it overvalued AS & S, resulting in the overpayment by AFS for George's stock in AS & S." We must reject this claim, based on our foregoing discussion, and, more important, based on the fact that we cannot conclude that there indeed exists a dispute on this issue due to appellant's bald and conclusory allegations on such matters. Appellant provides no evidence that would tend to indicate a factual basis for these allegations. Appellant has presented no figures concerning the valuation of AS & S stock, and how its value compared with that of AFS stock. Without such factual evidence as to an alleged value of the AS & S stock, we cannot disturb the well-settled business judgment doctrine, as it relates to a corporation's directors and the decisions they make in such capacity.

Under the Business Judgment Rule, there is a presumption that directors of a corporation acted in good faith and in the best interest of the corporation. In order to rebut a business judgment claim, the party challenging the validity of a board's actions must produce evidence sufficient to rebut this presumption.

It is, of course, well established that courts generally will not interfere with the internal management of a corporation and that the conduct of the corporation's affairs are placed in the hands of the board of directors and if the majority of the board properly exercises its business judgment, the directors are not ordinarily liable.

*Wittman v. Crooke*, 120 Md.App. 369, 375, 707 A.2d 422 (1998) (citations and internal quotation marks omitted).

█ The *Wittman* Court also stated that, "[i]f the corporate directors' conduct is authorized, a showing must be made of fraud, self-dealing or unconscionable conduct to justify judicial review." *Id.* at 376, 707 A.2d 422. In the case at hand, appellant concedes that appellee did not act fraudulently, and there is no evidence presented by appellant, other than mere conclusory statements, that appellee, or any of the directors for that matter, did not act in good-faith during any

of the transactions of which appellant now complains. We find that appellant has not overcome the presumption that appellee acted in good faith and in the best interests of the corporation.

## VI.

Citing *Beatty,* 330 Md. at 737, 625 A.2d 1005, the trial judge stated that "the evidence offered to show a dispute of fact must be sufficiently detailed and precise to illuminate its nature." The trial judge found that "the facts in this case are basically undisputed. The issues presented are questions of law under the Court's discretion." We find that the trial judge correctly applied the law to the facts that were presented before him. Our review indicates that appellant failed to offer sufficient evidence in her opposition to summary judgment to allow a jury to consider her claims. Based on the foregoing discussion, and the applicable standard of review, set forth, *supra,* we think that Judge Phillip T. Caroom was legally correct in granting summary judgment in favor of appellee. Finding no error by the trial court, we shall affirm its decree.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**